**ANIMAL LEGAL DEFENSE FUND, INC.;**
Roseann Circelli; Mary Eagan; Marc Jurnove; and Audrey Rahn, Plaintiffs,

v.

Daniel **GLICKMAN,** Secretary of Agriculture; Dr. Lonnie King, Administrator, Animal and Plant Health Inspection Service; and the United States Department of Agriculture, Defendants.

Civil Action No. 96–00408.

United States District Court, District of Columbia.

Oct. 30, 1996.

Valerie J. Stanley, Animal Legal Defense Fund, Rockville, MD, and Katherine Meyer, Meyer & Glitzenstein, Washington, DC, for plaintiffs.

Thomas Millet, Kevin M. Simpson and Sherri Wattenbarger, Department of Justice, Civil Division; along with whom Frank W. Hunger, Assistant Attorney General, and Eric H. Holder, United States Attorney, appeared on the briefs; and along with whom Colleen Carroll, Department of Agriculture, appeared of counsel, for defendants.

**MEMORANDUM OPINION**

CHARLES R. RICHEY, District Judge.

**TABLE OF CONTENTS**

INTRODUCTION .................................................... 48
BACKGROUND ..................................................... 49
DISCUSSION ...................................................... 51
  I.  THE COURT SHALL DENY THE DEFENDANTS' MOTION TO DISMISS FOR LACK OF STANDING BECAUSE THE PLAINTIFFS HAVE CONSTITUTIONAL AND STATUTORY STANDING TO CHALLENGE THE AGENCY'S ACTIONS AND OMISSIONS ................................... 51
    A.  The ALDF Lacks Standing To Sue On Behalf Of Its Members ............... 52
    B.  The ALDF Has Constitutional And Statutory Standing To Sue In Its Own Capacity With Respect To Count IV ..................................... 53
    C.  Roseann Circelli, Mary Eagan, And Marc Jurnove Have Constitutional And Statutory Standing To Sue With Respect To Count I–III; Marc Jurnove And Audrey Rahn Have Constitutional And Statutory Standing To Sue With Respect To Count V ........................................... 54
      1.  The Individual Plaintiffs Have Alleged Injury In Fact ..................... 54

    2. The Injury To The Individual Plaintiffs Is Traceable To The Defendants' Actions Or Omissions ........................................... 56

    3. The Injury To The Individual Plaintiffs Will Be Redressed By The Relief Sought .................................................... 56

    4. The Injury To The Individual Plaintiffs Is Within The Zone Of Interests To Be Protected By The AWA .................................. 56

II. THE COURT SHALL GRANT THE DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' EXHIBITS ............................................ 57

    A. The Plaintiffs' Extra–Record Exhibits Will Not Be Admitted Under The "Predictions" Exception In Support Of Their Challenges To The Agency's Regulations .................................................... 57

    B. The Plaintiffs' Extra–Record Exhibits Shall Not Be Admitted In Support Of Their Agency Action Unreasonably Delayed Claim Or Their Nonenforcement Claim .................................................... 58

III. THE COURT SHALL GRANT THE PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND SHALL DENY THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO COUNTS I–IV .... 59

    A. The Court Shall Enter Judgment In Favor Of The Plaintiffs on Count I; 9 C.F.R. § 3.81 Violates The APA Because It Fails To Set Standards Including Minimum Requirements, As Mandated By The AWA ............. 59

    B. The Court Shall Enter Judgment In Favor Of The Plaintiffs On Count II; The Agency's Failure To Promulgate Standards For A Physical Environment Adequate To Promote The Psychological Well–Being Of Primates Constitutes Agency Action Unlawfully Withheld And Unreasonably Delayed In Violation Of The APA ........................................ 59

    C. The Court Shall Enter Judgment In Favor Of The Plaintiffs On Count III; The Agency's Failure To Issue A Regulation Promoting The Social Grouping Of Nonhuman Primates Is Arbitrary, Capricious, And An Abuse Of Discretion In Violation Of The APA ............................ 60

    D. The Court Shall Enter Judgment In Favor Of The Plaintiffs On Count IV; The Agency's Regulation Requiring "Plans" To Be Kept On–Site Violated The Notice And Comment Provisions Of The APA ........................ 61

IV. THE COURT SHALL GRANT THE DEFENDANTS' MOTION TO DISMISS WITH RESPECT TO COUNT V BECAUSE IT IS A NON–JUSTICIABLE CLAIM ....................................................... 62

CONCLUSION ................................................... 64

## INTRODUCTION

This action was brought pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, by the Animal Legal Defense Fund ("ALDF") and four individuals, to challenge (1) regulations promulgated by the agency[1] under the Animal Welfare Act ("AWA"), 7 U.S.C. § 2131 *et seq.;* and (2) the agency's abdication of its statutory duties to enforce the AWA.

This Court previously held that the challenged regulations violated both the AWA and the APA. *See Animal Legal Defense Fund, Inc. v. Secretary of Agriculture,* 813 F.Supp. 882 (D.D.C.1993). However, the Court's decision was subsequently vacated when the Court of Appeals for the District of Columbia Circuit ruled that the plaintiffs had not demonstrated that they had standing to pursue their claims. *See Animal Legal Defense Fund, Inc. v. Espy,* 29 F.3d 720 (D.C.Cir.1994).

In the present case, the plaintiffs have moved for summary judgment on Counts I–IV of their Amended Complaint. The plaintiffs assert that: (1) the agency's regulation governing the psychological enrichment of primates violates the plain language of the AWA and thus, pursuant to the APA, must be set aside as contrary to law; (2) the agency's failure to set standards for the psy-

---

1. The plaintiffs have named the Secretary of Agriculture (the "Secretary"), the Administrator of the Animal and Plant Health Inspection Service ("APHIS"), and the United States Department of Agriculture ("USDA"). The Court shall refer to these defendants collectively as "the defendants" or "the agency."

chological enrichment of primates constitutes agency action unlawfully withheld and unreasonably delayed in violation of the APA; (3) the agency's failure to issue a regulation promoting the social grouping of primates violates the APA because it is arbitrary and capricious; and (4) the agency's regulation that shields plans from the public violates the Notice and Comment provisions of the APA. The defendants have cross-moved for summary judgment on Counts I–IV.

In Count V of their Amended Complaint, the plaintiffs contend that the agency's practices and policies amount to a complete abdication of its statutory responsibility to enforce the AWA. The plaintiffs rely on this Circuit's *en banc* decision in *Adams v. Richardson*, 480 F.2d 1159 (D.C.Cir.1973). With respect to Count V, the plaintiffs assert the need for discovery. The defendants move for dismissal of Count V on the basis that it is a "non-justiciable" claim, that is, that it impermissibly seeks judicial review of matters committed to agency discretion by law under the APA. Furthermore, the defendants have moved for dismissal of Counts I–V on the ground that the plaintiffs lack standing. Finally, the defendants have moved to strike various exhibits filed by the plaintiffs in support of their summary judgment motion on the ground that those exhibits are not a part of the administrative record.

Based on the pleadings, the entire record herein, and the law applicable thereto, and for the reasons expressed below, the Court shall deny the defendants' Motion to Dismiss for lack of standing. The Court shall grant the defendants' Motion to Strike. The Court shall grant summary judgment in favor of the plaintiffs on Counts I–IV of the Complaint and shall grant the defendants' Motion to Dismiss Count V of the Complaint. Finally, the Court shall remand to the agency for rulemaking proceedings consistent with the following Memorandum Opinion and Order.

## BACKGROUND

In 1985, Congress passed the Improved Standards for Laboratory Animals Act, which amended the Animal Welfare Act, 7 U.S.C. §§ 2131–59 ("AWA"), and provides for the humane treatment of animals. Specifically, the AWA now requires the Secretary to "promulgate standards to govern the humane handling, care, treatment and transportation of animals by dealers, research facilities, and exhibitors [2]." 7 U.S.C. § 2143(a)(1). The standards must include "minimum requirements for a physical environment adequate to promote the psychological well-being of primates ( [monkeys] )." 7 U.S.C. § 2143(a)(2)(B); *see* 7 U.S.C. § 2132(g).

Subsequent to the passage of the 1985 amendments to the AWA, the agency waited 6 years to publish final regulations. As hereinafter explained, the agency seriously delayed undertaking its responsibilities pursuant to the AWA and, ultimately, failed to live up to its obligations.

Specifically, in response to its mandate from Congress, the agency, on March 7, 1986, published a notice in the *Federal Register* stating its *intent* to promulgate standards and regulations for the care and treatment of animals. AR 1; 51 Fed.Reg. 7950. The Notice solicited information and comments on that proposed rulemaking. On March 15, 1989, the agency finally published a set of proposed rules. AR 568; 54 Fed.Reg. 10897. The agency solicited comments on the proposed rules for 120 days and received a total of 10,686 comments in time for consideration. AR 1368; 55 Fed.Reg. 33448. The number of comments received serves to illustrate the importance of this matter, if nothing else. Rather than respond to these comments, however, the agency instead published a *sec-*

---

**2.** The term "exhibitor" means "any person (public or private) exhibiting any animals, which were purchased in commerce or the intended distribution of which affects commerce, or will affect commerce, to the public for compensation, as determined by the Secretary, and such term includes carnivals, circuses, and zoos exhibiting such animals whether operated for profit or not; but such term excludes retail pet stores, organizations sponsoring and all persons participating in State and country fairs, livestock shows, rodeos, purebred dog and cat shows, and any other fairs or exhibitions intended to advance agricultural arts and sciences, as may be determined by the Secretary." 7 U.S.C. § 2132(h).

*ond* set of proposed rules on August 15, 1990. *Id.* The Secretary received comments until October 1, 1990, at a total of 11,932 comments. AR 1878; 56 Fed.Reg. 6426. Finally, the agency published its ·regulations on February 15, 1991, which became effective on March 18, 1991. *Id.*

Instead of setting standards, as the AWA directs, the agency's regulation at 9 C.F.R. § 3.81 provides that "Dealers, exhibitors, and research facilities must develop, document, and follow an appropriate plan for environment enhancement adequate to promote the psychological well-being of nonhuman primates ... in accordance with the currently accepted professional standards as cited in appropriate professional journals or reference guides, and as directed by the attending veterinarian." 9 C.F.R. § 3.81. The regulation does not provide for minimum requirements of social grouping, despite the agency's findings that social grouping promotes primate psychological well-being. Furthermore, the regulation provides that the "plan[s] must be made available to APHIS upon request." *Id.* Thus, the regulation effectively restricts public access to these "plans" by providing that the regulated entities maintain the plans on-site, where the plans would not be subject to Freedom of Information Act requests by members of the public. *See* 5 U.S.C. § 552.

At the outset, the Court shall state the following. This case involves animals, a subject that should be of great importance to all humankind. It also involves the failures of our system of government, another subject of great concern. With respect to Counts I–IV of the Complaint, this case involves an abject failure in the rulemaking process, representative not only of the defendants here, but of many agencies serving under Article II of the Constitution. With respect to Count V, even though it is non-justiciable, it represents the failure of these defendants, like many others in the Executive Branch, to enforce the AWA and its implementing regulations. It also illustrates a failure on the part of Congress to effectively legislate in accordance with the enacting clause of a statute.

Specifically, the AWA has written into a Congressional statement of policy:

The Congress finds that ... the regulation of animals and activities ... is necessary ... in order—

(1) to insure that animals intended for use in research. facilities or for exhibition purposes or for use as pets are provided humane care and treatment;

(2) to assure the humane treatment of animals during transportation in commerce; and

(3) to protect the owners of animals from the theft of their animals by preventing the sale or use of animals which have been stolen.

The Congress further finds that it is essential to regulate ... the transportation, purchase, sale, housing, care, handling, and treatment of animals by carriers or by persons or organizations engaged in using them for research or experimental purposes or for exhibition purposes or holding them for sale as pets or for any such purpose of use.

7 U.S.C. § 2131. Despite this clear statement of purpose, the AWA's enforcement provisions provide that the "Secretary shall make investigations or inspections *as he deems necessary....*" 7 U.S.C. § 2146. Thus, while Congress set forth a clear mandate of humane treatment of animals, it then took away from that mandate by granting unbridled discretion to the agency which, as past experience indicates, will do little or nothing.

The agency's conduct in this and other cases that have come before this member of the Court not only is egregious because of its delayed nature, but represents, in the eyes of at least more than 50,000 members of the plaintiff organization, one of the basic reasons why the American people have lost faith in much of their government. The inaction and eventual failure to act in accordance with law remind the Court of the sage and accurate statement of the late Judge J. Skelly Wright of the Court of Appeals for this Circuit when, in essence, he noted that the regulators in Washington are regulated by the regulated. *See Moss v. Civil Aeronautics Bd.,* 430 F.2d 891, 893 (D.C.Cir.1970)

(Wright, J.) ("This appeal presents the recurring question which has plagued public regulation of industry: whether the regulatory agency is unduly oriented toward the interests of the industry it is designed to regulate, rather than the public interest it is designed to protect.").

Furthermore, this case illustrates the need for Congressional reform. All too often, Congress enacts generalized legislation and, thus, passes to an executive agency the responsibility to interpret and fill in gaps that Congress itself could not or would not specifically legislate. Having observed this process for more than 48 years, this Court believes the problem is due in major part to the decline in what was once known as "party responsibility" and also illustrates that Congress, in large measure, is beholden to special interest groups who are unknown to the general public. These groups transfer their efforts from the Legislative Branch to the Executive Branch to effect their goals. Cases like this illustrate their success in achieving delay and inaction.

Were either or both the Legislative and Executive Branches more successful in the lawful exercise of their responsibilities under Articles I and II of the Constitution, it would not be necessary for the Courts to intervene. A. de Tocqueville once observed: "Scarcely any political question arises in the United States that is not resolved, sooner or later, into a judicial question." 1 A. de Tocqueville, Democracy in America 98, 280 (P. Bradley Knoff ed. 1948). How sad that this is so. Thanks to Article III, however, the Courts remain to provide the last medium of hope for all Americans. The Court will now proceed with its legal analysis of the matters before it for adjudication.

\* \* \*

In Count I of the present Complaint, the individual plaintiffs Roseann Circelli, Mary Eagan, and Marc Jurnove challenge the regulation at 9 C.F.R. § 3.81, which allows regulated entities, such as exhibitors, to develop their own "plans" for the psychological well-being of primates. They claim that this regulation violates the plain language of the AWA at 7 U.S.C. § 2143 and, thus, must be set aside as contrary to law under the APA, 5 U.S.C. § 706(2)(A). Plaints' Opp. at 2. In Count II, these individuals challenge the agency's unreasonable delay in promulgating standards to promote the psychological well-being of primates. They claim this delay constitutes agency action unlawfully withheld and unreasonably delayed in violation of the APA, 5 U.S.C. § 706(1). *Id.* In Count III, these individuals challenge the agency's failure to require the social grouping of primates as being arbitrary and capricious under the APA, 5 U.S.C. § 706(2)(A). In Count IV, the organizational plaintiff, ALDF, sues on its own behalf and on behalf of its members to remedy the defendants' procedural violations of the APA, 5 U.S.C. § 553(b)(3), in issuing its regulation that requires the regulated entities to keep their "plans" on-site. In Count V, the individual plaintiffs Marc Jurnove and Audrey Rahn challenge the agency's alleged abdication of its statutory responsibilities to enforce the AWA.

The plaintiffs seek, *inter alia*, to declare unlawful and set aside the agency's regulation at 9 C.F.R. § 3.81 and to compel the agency to promulgate standards for a physical environment adequate to promote the psychological well-being and the social grouping of primates. The plaintiffs also seek the appointment of a Special Master to investigate the agency and report to the Court concerning remedial actions that can and should be taken by the agency. The defendants have moved to dismiss on the basis that the plaintiffs lack standing to bring this action and on the basis that Count V is a non-justiciable claim. The parties have filed cross-motions for summary judgment on the merits of Counts I–IV.

## DISCUSSION

### I

**THE COURT SHALL DENY THE DEFENDANTS' MOTION TO DISMISS FOR LACK OF STANDING BECAUSE THE PLAINTIFFS HAVE CONSTITUTIONAL AND STATUTORY STANDING TO CHALLENGE THE AGENCY'S ACTIONS AND OMISSIONS.**

For purposes of ruling on a motion to dismiss for lack of standing, this Court must accept as true all material allegations of the complaint, and must construe the complaint in favor of the plaintiffs. *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206–07, 45 L.Ed.2d 343 (1975). To secure constitutional standing, the plaintiffs must show "injury in fact" that is fairly traceable to the defendants' action and redressable by the relief requested. *Animal Legal Defense Fund, Inc. v. Espy,* 23 F.3d 496, 498 (D.C.Cir.1994). "Injury in fact" must amount to the "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *United States v. Hays,* —— U.S. ——, ——, 115 S.Ct. 2431, 2435, 132 L.Ed.2d 635 (1995); *see also United States v. SCRAP,* 412 U.S. 669, 689–90 & n. 14, 93 S.Ct. 2405, 2417 & n. 14, 37 L.Ed.2d 254 (1973) ("[A]n identifiable trifle is enough for standing to fight out a question of principle."). To secure judicial review under the APA, the plaintiffs must show that the injuries they assert fall within the "zone of interests" of the relevant statute. *Animal Legal Defense Fund,* 23 F.3d at 499. As the party seeking to invoke the Court's jurisdiction, it is a plaintiff's burden clearly to allege facts demonstrating that he or she is a proper party to the suit. *Warth,* 422 U.S. at 518, 95 S.Ct. at 2215.

The Court concludes, based on the following, that the ALDF lacks representational standing to sue on behalf of its members because it has failed to allege that any of its members would have standing to bring suit on his or her own.[3] The Court concludes, however, that the ALDF has organizational standing to sue on its own behalf. Also, the individual plaintiffs Roseann Circelli, Mary Eagan, Marc Jurnove, and Audrey Rahn, have standing to sue. The ALDF, as an organization, and each individual plaintiff have alleged injury caused by the defendants' actions or omissions that is remediable by the Court's order and the injury is to an interest within the zone of interests to be protected or regulated by the AWA. *See*

*Action Alliance of Senior Citizens v. Heckler,* 789 F.2d 931, 936 (D.C.Cir.1986).

## A. The ALDF Lacks Standing To Sue On Behalf Of Its Members.

As in the present case, when an organization seeks standing to litigate, it may do so in two capacities—on its own behalf and on behalf of its members. *American Legal Found. v. Federal Communications Comm'n,* 808 F.2d 84, 89 (D.C.Cir.1987). To establish standing on its own behalf (organizational standing), the organization's pleadings must survive the same standing analysis as that applied to an individual. *Id.* To establish standing as an appropriate representative of its members (representational standing), the organization must show that (1) the interests the organization seeks to protect are germane to its organizational purposes; (2) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit; and (3) its members would otherwise have standing to sue in their own right. *United Food & Commercial Workers v. Brown Group, Inc.,* —— U.S. ——, ——, 116 S.Ct. 1529, 1530, 134 L.Ed.2d 758 (1996) (citing *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Hunt v. Washington Apple Advertising Comm'n,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); and *Automobile Workers v. Brock,* 477 U.S. 274, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986)).

Although the Court concludes that the first two requirements of representational standing are met in the present case, the ALDF's claim for representational standing must fail because the ALDF has not alleged that its members, or any one of them, are suffering immediate or threatened injury of the sort that would make out a justiciable case had the members themselves brought suit. *See Warth,* 422 U.S. at 515, 95 S.Ct. at 2213–14. In other words, the ALDF has not specifically alleged that any one of its members has suffered or will suffer concrete and imminent injury.

---

**3.** The individuals separately listed as plaintiffs in the above-captioned case are not alleged to be members of the plaintiff organization.

**B. The ALDF Has Constitutional And Statutory Standing To Sue In Its Own Capacity With Respect To Count IV.**

There is no question that an organization may have standing in its own right to seek judicial relief from injury to itself and to vindicate the rights and immunities itself may enjoy. *Warth,* 422 U.S. at 511, 95 S.Ct. at 2211–12. An organization shows "injury in fact" by alleging "concrete and demonstrable injury to the organization's activities." *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 379, 102 S.Ct. 1114, 1124, 71 L.Ed.2d 214 (1982).

The plaintiff ALDF is a national, nonprofit corporation organized and existing under the laws of the State of California, having a nationwide membership and constituency of over 50,000 persons who claim to be dedicated to improving the treatment of animals through all legal means. First Am.Compl. ¶ 11. ALDF describes its organizational purposes and activities as including initiating and participating in federal and state legal actions and administrative rulemaking proceedings concerning the humane care and use of all animals; providing information and legal opinions to its members, the general public, and government agencies; advocating the concerns of its members regarding the care and welfare of animals protected under the AWA and any agency act or omission that causes or permits physical pain, behavioral distress, suffering, debilitation, and/or death to animals; ensuring that important governmental decisions affecting the lives and interests of animals are based on a rational analysis and made according to law. *Id.* ¶ 12. The ALDF further describes one of its goals as to improve the living conditions for nonhuman primates, including chimpanzees, who are kept for public display. *Id.* ¶ 13. The ALDF also responds to its members' concerns about the living conditions of nonhuman primates. *Id.* The ALDF claims that the agency's denial of access to exhibitor's plans for primate psychological well-being prohibits the ALDF from learning, and advising its members about 1) the nature of the standards for primate psychological well-being that the agency is authorizing exhibitors to provide their nonhuman primates and 2) whether those standards are being met. *Id.*

The Court of Appeals for this Circuit previously has entertained standing challenges to claims brought by the ALDF when those claims rested on the ALDF's alleged inability to disseminate information to its members about compliance with the AWA. In *Animal Legal Defense Fund, Inc. v. Espy,* 23 F.3d 496, 501 (D.C.Cir.1994) ("*ALDF I* "), and *Animal Legal Defense Fund, Inc. v. Espy,* 29 F.3d 720, 724 (D.C.Cir.1994) ("*ALDF II* "), the Court of Appeals held that the ALDF's claim of "informational" injury satisfied the minimum standing requirements of Article III and, thus, that the ALDF had Constitutional standing. Indeed, the agency's action in not accepting the individual plans in order to shield them from the public access provisions of FOIA directly results in injury to the ALDF's informational and counseling activities. *See Havens,* 455 U.S. at 379, 102 S.Ct. at 1124–25; *Scientists' Inst. for Public Info. v. Atomic Energy Comm'n,* 481 F.2d 1079, 1087 n. 29 (D.C.Cir.1973) (organization had standing to challenge Commission's decision not to issue an environmental impact statement because the agency limited the plaintiff's ability to inform the public); *Action Alliance of Senior Citizens v. Heckler,* 789 F.2d 931, 939 n. 9 (D.C.Cir.1986) (organization had standing to challenge HHS regulation diminishing plaintiff's counseling and advocacy services by improperly limiting flow of information concerning age discrimination). The Court concluded, however, that the ALDF lacked *statutory* standing.

In *ALDF I* and *ALDF II,* the Court of Appeals did *not* hold that the ALDF failed to show that its claim fell within the "zone of interests" protected by the AWA, but, rather, that the ALDF was *precluded* from so showing because "the general informational and educative interests in animal welfare upon which the organizations base their suit are, by the terms of the Act, the province of a different institution altogether," namely the oversight committees provided for in § 2143(b)(1) of the AWA. *ALDF I,* 23 F.3d at 503; *ALDF II,* 29 F.3d at 724. However, while the AWA establishes committees to

oversee *research facilities*, it does not establish the same for *exhibitors*, which are at the focus of the present complaint. Thus, in the present case, there is no statutory impediment to the ALDF's assertion that its claim falls within the AWA's zone of interests.

■ To meet its burden under the zone of interests test, the ALDF must show "a congressional intent to benefit the organization or some indication that the organization is 'a peculiarly suitable challenger of administrative neglect.'" *ALDF I,* 23 F.3d at 503; *Federation for Am. Immigration Reform, Inc. v. Reno,* 93 F.3d 897, 900 (D.C.Cir.1996) ("To qualify as [a suitable challenger], a party must show 'less than an intent to benefit but more than a "marginal[ ] rela[tionship]" to the statutory purposes.'") (citations omitted).

The AWA's purpose, *inter alia,* is to provide for the establishment and enforcement of standards to ensure the humane conditions of primates that are kept for public display. The ALDF has, as one of its goals, to improve the living conditions for primates who are kept for public display and to counsel and inform its members and the public about AWA compliance in this regard. It is reasonable to assume, therefore, that an organization such as the ALDF was intended to benefit from the AWA.

Even if it is less than clear that the ALDF is an intended beneficiary of the AWA, however, the ALDF has demonstrated that it is a particularly suitable challenger to administrative neglect on behalf of the agency. ALDF expends valuable organizational resources in its efforts to improve conditions for nonhuman primates kept for public display and to educate and counsel its members and the public about the nature of standards for primate psychological well-being and whether those standards are being met. The ALDF's stake in this litigation is high because the agency's failures to comply with statutory mandate cause a consequent drain on the ALDF's efforts and resources. *See Spann v. Colonial Village, Inc.,* 899 F.2d 24, 27 (D.C.Cir.1990).

Furthermore, the ALDF and its members participated in every rulemaking proceeding concerning the 1985 Amendments by timely submitting comments during the 1986, 1987, 1989, and 1990 public comment periods. First Am.Compl. ¶ 14. Its vigorous participation in the regulatory process further demonstrates its stake in the outcome of the instant suit. Based on the foregoing, the Court is convinced that this plaintiff is peculiarly suitable challenger of the agency's alleged actions and omissions here. *See ALDF I,* 23 F.3d at 503.

**C. Roseann Circelli, Mary Eagan, And Marc Jurnove Have Constitutional And Statutory Standing To Sue With Respect To Count I–III; Marc Jurnove And Audrey Rahn Have Constitutional And Statutory Standing To Sue With Respect To Count V.**

*1. The Individual Plaintiffs Have Alleged Injury In Fact.*

Circelli, Eagan, and Jurnove challenge, in Counts I–III, the agency's promulgation of 9 C.F.R. § 3.81, the agency's delay in promulgating standards to promote the psychological well-being of primates, and the agency's failure to require the social grouping of primates. Circelli is a 10 year resident of Warren, New Jersey. Throughout her life she has loved animals and been fascinated with, and compassionate towards them. First Am. Compl. ¶ 18. Eagan is a 6–year resident of Holland, Ohio. She also has loved animals all her life. *Id.* ¶ 30. Jurnove is a 45–year resident of New York State. He is a retired mounted park ranger who has had a life-long love for animals, has compassion for their suffering, a desire to ensure that their suffering is reduced and their needs for humane care and protection satisfied. Jurnove was a humane investigator for thirteen years. Since 1980, he has served as a New York State representative of the American Horse Protection Association, specializing in cases of horse abuse and has held a state license as a wildlife rehabilitator. *Id.* ¶ 42.

Circelli, Eagan, and Jurnove each claim to have an aesthetic, recreational, personal, and educational interest in observing, photographing, writing about, learning about, interacting with, and teaching others about wild and exotic animals kept in humane envi-

ronments. Each also derive aesthetic benefit from seeing these animals treated humanely. Each claim that their aesthetic enjoyment of the animals is impaired, and each claim they experience personal distress, anguish, and sadness when they witness animals in inhumane or harmful conditions. *See* First Am. Compl. at ¶¶ 19, 30, 43.

With respect to Count I–III of the First Amended Complaint, Circelli, Eagan, and Jurnove each alleges that they personally visited an animal exhibition facility and that each personally observed animals, including primates, kept in inhumane conditions and that each, in fact, suffered extreme aesthetic injury and psychological harm from the experience. *Id.* ¶¶ 21, 32, 49. Each allege that they observed the primates in solitary and barren or dirty cages. *Id.* ¶¶ 21, 32, 48. Circelli, Eagan, and Jurnove each allege that they presently experience anguish and suffering when they recall the experience. *Id.* ¶ 27, 32, 58. Furthermore, Circelli alleges that she wishes to return to the facility she visited but is fearful that returning will increase the level of anxiety she already experiences from her previous visit. *Id.* ¶ 26. Eagan also wishes to return, but cannot bear to do so. *Id.* ¶ 33. Jurnove will continue to visit, but cannot do so without continuing to suffer aesthetic and emotional injury. *Id.* ¶ 57.

With respect to Count V of the First Amended Complaint, Jurnove additionally alleges physical and mental distress when he realizes that he is powerless to help the animals he personally witnesses suffering because of the improper implementation and enforcement of the AWA by the defendants, such as their failure to reinspect exhibitors in violation and failure to document violations. *Id.* ¶¶ 58–60. Audrey Rahn, a 13 year resident of Cedar Rapids, Iowa, also claims to have visited an animal exhibitor facility, which she intends to revisit. *Id.* ¶¶ 62–63. During her numerous visits, Rahn's aesthetic enjoyment of the animals was impaired and she experienced physical and mental distress when she witnessed the animals in inhumane conditions and realized that she was powerless to help the animals she witnessed suffering without proper inspection and enforce-

ment of the AWA by the defendants. *Id.* ¶¶ 71–72.

The Court concludes that these individual plaintiffs have indeed alleged injury in fact. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 562–63, 112 S.Ct. 2130, 2137–38, 119 L.Ed.2d 351 (1992) ("[T]he desire to . . . observe an animal species, even for purely aesthetic purposes, is undeniably a cognizable interest for. purpose of standing."); *Humane Society of the United States v. Hodel,* 840 F.2d 45, 52 (D.C.Cir.1988) ("[T]he existence of hunting on wildlife refuges forces Society members to witness animal corpses and environmental degradation, in addition to depleting the supply of animals and birds that refuge visitors seek to view. These are classic aesthetic interest, which have always enjoyed protection under standing analysis."). These allegations of injury constitute far more than a "special interest in the topic" of animal welfare, which was found to be insufficient to confer standing in *Lujan,* 504 U.S. at 555, 112 S.Ct. at 2130. They establish that the plaintiffs were personally and directly affected apart from any special interest they share. *See Fund for Animals, Inc. v. Espy,* 814 F.Supp. 142, 149 (D.D.C.1993) (Oberdorfer, J.) (injuries found to be are distinct from those suffered by the public at large and represented more than a generalized concern for the animals' welfare). *See also Center for Auto Safety v. National Highway Traffic Safety Admin.,* 793 F.2d 1322, 1337 (D.C.Cir.1986) ("The courts may appropriately function as the guardians of majority interests, without weakening the separation of powers, when Congress has decided to grant them that role."); *Sierra Club v. Morton,* 405 U.S. 727, 734–35, 92 S.Ct. 1361, 1365–66, 31 L.Ed.2d 636 (1972) (the fact that particular interests are shared by the many rather than the few does not make them less deserving of legal protection through the judicial process).

Each plaintiff alleges that they personally experienced injury from witnessing animals for exhibition kept under inhumane conditions. Each continue to experience aesthetic injuries because of what they witnessed at the facilities they visited. First Am. Compl. ¶ 23, 32, 53, 77–79. Also, each allege that

they continue to experience injury because they are forced either to forego future visits or to return to the facilities to visit the animals and be subjected to increased injury due to viewing the animals in inhumane conditions. This injury is concrete and particularized. *See Lujan*, 504 U.S. at 560 n. 1, 112 S.Ct. at 2136 n. 1 ("By particularized, we mean that the injury must affect the plaintiff in a personal and individual way."). Furthermore, it is imminent as it is on-going and presently occurring.

### 2. The Injury To The Individual Plaintiffs Is Traceable To The Defendants' Actions Or Omissions.

■ In order to have standing, the plaintiffs must also allege that the injury or threat they suffer is fairly traceable to the agency action or omission of which they complain. *Duke Power Co. v. Carolina Env't'l Study Group*, 438 U.S. 59, 72, 98 S.Ct. 2620, 2629–30, 57 L.Ed.2d 595 (1978). The injuries alleged by the individual plaintiffs here are fairly traceable to the defendants' actions and omissions.

Congress has charged the agency with "promulgating standards to govern the humane handling, care, treatment, and transportation of animals by dealers, research facilities, and exhibitors." 7 U.S.C. § 2143(a)(1). These include "minimum requirements ... for a physical environment adequate to promote the psychological well-being of primates." *Id.* § 2143(a)(2)(B). Furthermore, the agency is responsible for enforcing the AWA and its implementing regulations. 7 U.S.C. § 2146. Under such a scheme, Congress, and the Court, assumes that regulated entities act as the agency directs them to act, upon threat of, among other things, losing their license to exhibit animals. Thus, the plaintiffs' alleged injuries in observing animals and primates on public display in inhumane conditions are fairly traceable to the agency's failure to comply with its statutory duties to promulgate appropriate regulations and to enforce the AWA.

Specifically, the injuries to Circelli, Eagan, and Jurnove are fairly traceable to the failure of the agency to promulgate standards for a physical environment adequate to promote the psychological well-being of primates because these plaintiffs claim they suffered injury to their aesthetic interest in viewing nonhuman primates in conditions that did not promote the psychological well-being or social grouping of these animals. Jurnove's and Rahn's injuries are fairly traceable to the defendant's alleged failure to inspect exhibitor facilities and to enforce compliance with the AWA. In this regard, the Court notes that the harm alleged by the plaintiffs here is much more direct than that found sufficient for standing in *SCRAP*, when the Supreme Court found that the plaintiff's members use of natural resources was disturbed by the adverse environmental impact caused by the nonuse of recyclable goods brought about by a rate increase on those commodities. 412 U.S. at 688, 93 S.Ct. at 2416.

### 3. The Injury To The Individual Plaintiffs Will Be Redressed By The Relief Sought.

■ The plaintiffs must show that an injury they have alleged will likely be redressed by the relief requested. *See Larson v. Valente*, 456 U.S. 228, 242, 102 S.Ct. 1673, 1682, 72 L.Ed.2d 33 (1982). A ruling that the defendants have not complied with the Congressional mandate of the AWA, which calls for them to establish and enforce standards for the humane treatment of animals, would meet this test. *See Allen v. Wright*, 468 U.S. 737, 759 & n. 24, 104 S.Ct. 3315, 3328–29 & n. 24, 82 L.Ed.2d 556 (1984) (if relief requested is cessation of allegedly illegal conduct, the redressability analysis is identical to the fairly traceable analysis). The AWA was intended to ensure the humane treatment of animals. Unless the entire statutory scheme is meaningless, the defendants, charged with effectuating the AWA, can accomplish the goals of the Act by acting pursuant to its mandate.

### 4. The Injury To The Individual Plaintiffs Is Within The Zone Of Interests To Be Protected By The AWA.

■ The "zone of interests" test requires "some indicia—however slight—that the litigant before the court was intended to be

protected, benefited or regulated by the statute under which suit is brought." *Autolog Corp. v. Regan,* 731 F.2d 25, 29 (D.C.Cir. 1984) (quoting *Copper & Brass Fabricators v. Department of the Treasury,* 679 F.2d 951, 952 (D.C.Cir.1982)). Moreover, this Court interprets a statute's zone of interests broadly in recognition that the test originally was intended to expand the number of litigants able to assert their rights in court. *Id.* at 29–30.

The Congressional statement of policy for the AWA provides that "[t]he Congress finds ... that regulation of animals and activities as provided in this chapter is necessary ... (1) to insure that animals intended ... *for exhibition purposes* ... are provided humane care and treatment." 7 U.S.C. § 2131 (emphasis added). The plaintiffs' aesthetic interest in observing animals on public exhibition in humane conditions clearly falls within the zone of interests of the statute.

The question of standing under the APA depends upon whether the party has alleged such a "personal stake in the outcome of the controversy" that "the dispute sought to be adjudicated will be presented in an adversarial context and in a form historically viewed as capable of judicial resolution." *Sierra Club,* 405 U.S. at 732, 92 S.Ct. at 1364. The plaintiffs here have amply demonstrated that they have a personal stake in the outcome of this litigation and are zealous adversaries in this cause.

## II

### THE COURT SHALL GRANT THE DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' EXHIBITS.

In examining the validity of regulations promulgated by an agency, the reviewing court ordinarily considers only those materials before the agency when it made its decision.[4] *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 743–44, 105 S.Ct. 1598, 1606–07, 84 L.Ed.2d 643 (1985). Exceptions to this general rule have been recognized:

(1) when agency action is not adequately explained in the record before the court; (2) when the agency failed to consider factors which are relevant to its final decision; (3) when an agency considered evidence which it failed to include in the record; (4) when a case is so complex that a court needs more evidence to enable it to understand the issues clearly; (5) in cases where evidence arising after the agency action shows whether the decision was correct or not; (6) in cases where agencies are sued for a failure to take action; (7) in cases arising under the National Environmental Policy Act; and (8) in cases where relief is at issue, especially at the preliminary injunction stage.

*Esch v. Yeutter,* 876 F.2d 976, 991 (D.C.Cir. 1989) (quoting Stark & Wald, *Setting No Records: The Failed Attempts to Limit the Record in Review of Administrative Action,* 36 Admin.L.Rev. 333, 345 (1984)). The plaintiffs here have, in support of their Motion for Partial Summary Judgment, submitted exhibits external to the administrative record, including videotapes, pictures, inspections reports, enforcement audits, and affidavits. The plaintiffs claim that supplementation of the record here with materials outside the administrative record is appropriate: (1) to show the truth or falsity of the agency's predictions made in support of the regulations at issue; and (2) to show that the agency has failed to enforce the AWA and has unreasonably delayed execution of the AWA's mandate to promulgate minimum requirements concerning the housing of animals. The Court agrees with the defendants that neither of these arguments support the admission of the plaintiffs' extra-record materials at this stage in the case.

### A. The Plaintiffs' Extra–Record Exhibits Will Not Be Admitted Under The "Predictions" Exception In Support Of Their Challenges To The Agency's Regulations.

In *Amoco Oil Co. v. EPA,* 501 F.2d 722 (D.C.Cir.1974), the Court of Appeals permitted the consideration of evidence arising af-

---

**4.** In the present case, the parties have agreed that the Court consider certain sections of the record in making its determination. *See Walter*

*O. Boswell Memorial Hospital v. Heckler,* 749 F.2d 788 (D.C.Cir.1984).

ter the promulgation of a challenged rule as relevant to the truth or falsity of agency predictions made in support of the rule. *Id.* at 729 n. 10. This "prediction" exception to the general rule that only the record before the agency is considered has been recognized by other courts; however, it should be construed narrowly. *See Lorion,* 470 U.S. at 744, 105 S.Ct. at 1607. Cases that have recognized this exception have emphasized that the extra-record evidence must have some alternative indicia of reliability before it will be considered. *Amoco,* 501 F.2d at 729 n. 10 (court must "tread cautiously" when considering post-promulgation events because such information "reaches a reviewing court untested by any procedures ... designed to assure its accuracy and completeness"); *National Assn. of Demolition Contractors, Inc. v. Costle,* 565 F.2d 748, 752 (D.C.Cir.1977) (introduction of an extra-record study when the parties agreed that the study's conclusions were undisputed); *American Iron & Steel Inst. v. EPA,* 526 F.2d 1027, 1055 n. 61 (3d Cir.1975) (post-regulation announcements considered when they were reliable and uncontested); *Wisconsin Elec. Power Co. v. Costle,* 715 F.2d 323, 327 (7th Cir.1983) (supplementation of record not permitted when data "may be accurate in some sense, [but] may also be incomplete"); *Tanners' Council v. Train,* 540 F.2d 1188, 1194 (4th Cir.1976). Moreover, the "prediction" exception has not been uniformly recognized. *See WEPCO,* 715 F.2d at 327 (rejecting extra-record materials because to accept them would be to take the Court beyond its limited role of APA review and render regulations vulnerable to post hoc attacks and lack of finality); *American Iron,* 526 F.2d at 1077 (Adams, J., concurring) ("To entertain such information may encourage the use of the courts as mere extensions of a continuous administrative process [which would not] enhance the efficiency of the courts or the confidence of citizens in the fairness of the administrative process.").

■ Based on the foregoing, the Court does not find it appropriate to consider the extra-record materials under the "predictions" exception. The affidavits and videotapes demonstrating the alleged conditions on the premises of four exhibitors is contested and may present an incomplete picture. The inspection reports and audits similarly are incomplete because they provide information about only four exhibitors out of several thousand facilities under the agency's control. Accordingly, the Court shall not permit the extra-record evidence pursuant to the "predictions" exception.

**B. The Plaintiffs' Extra-Record Exhibits Shall Not Be Admitted In Support of Their Agency Action Unreasonably Delayed Claim Or Their Non-enforcement Claim.**

■ With respect to their claim that agency action has been unreasonably delayed, the plaintiffs' claim is based on their contention that the regulations at issue fail to comply with statutory mandate. First Am.Compl. ¶¶ 110–11. The Court sees no reason to look beyond the administrative record to decide this issue. Thus, the Court shall not permit extra-record evidence on this claim.

■ With respect to the plaintiffs' claim that the defendants have failed to enforce the AWA, neither party has moved for summary judgment on the merits of this claim. The question presented to the Court here is whether the plaintiff's claim is justiciable. Should this claim survive the instant motion to dismiss, the agency has requested the opportunity to compile an administrative record on this issue, which would evidence enforcement efforts undertaken by the agency nationwide. *See* Defs' Reply in Support of Motion to Strike at 8. In the event that administrative record is deemed inadequate, the defendants have suggested that the record be supplemented upon a showing that it is inadequate to permit judicial review. *See id.* (citing *Bar MK Ranches v. Yuetter,* 994 F.2d 735, 740 (10th Cir.1993)). The Court agrees that because the merits of this Count are not before the Court at this juncture, it shall grant the defendants' Motion to Strike and has considered only the administrative record for the purposes of this Memorandum Opinion and Order.

## III

### THE COURT SHALL GRANT THE PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND SHALL DENY THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO COUNTS I–IV.

Under the APA, the "reviewing court shall ... hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...." 5 U.S.C. § 706(2)(A). The reviewing court shall "compel [agency] action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

### A. The Court Shall Enter Judgment In Favor Of The Plaintiffs On Count I; 9 C.F.R. § 3.81 Violates The APA Because It Fails To Set Standards, Including Minimum Requirements, As Mandated By The AWA.

The AWA provides that the agency "*shall promulgate standards* to govern the humane handling, care, treatment, and transportation of animals by dealers, research facilities, and exhibitors." 7 U.S.C. § 2143(a)(1) (emphasis added). Moreover, those standards "*shall include minimum requirements* ... for a physical environment adequate to promote the psychological well-being of primates." *Id.* § 2143(a)(2)(B) (emphasis added).

"[T]he court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). The plain meaning of the term "standard" is "[t]hat which is set up and established by authority as a rule for the measure of quantity, weight, extent, value, or quality; esp., the original specimen weight or measure sanctioned by government.... a definite level, degree, material, character, quality, or the like, viewed as that which is proper and adequate for a given purpose." Webster's New Int'l Dictionary, 2d ed. (unabridged) (1944). "Minimum" is described as "[t]he least quantity or amount assignable, admissible, possible, etc., in a given case." *Id.* A "requirement" is a "requisite or essential condition." *Id.*

The implementing regulation, 9 C.F.R. § 3.81, entitled "environment enhancement to promote psychological well-being," requires that "exhibitors ... develop, document, and follow an appropriate plan for environment enhancement adequate to promote the psychological well-being of nonhuman primates ... in accordance with the currently accepted professional standards as cited in appropriate professional journals or reference guides, and as directed by the attending veterinarian." 9 C.F.R. § 3.81. The "plan" must "address" such topics as social grouping and environmental enrichment. *Id.*

The regulation violates the plain language of the AWA because it fails to set standards, including minimum requirements for a physical environment adequate to promote the psychological well-being of primates. Rather, the regulation completely delegates the establishment of such standards to the regulated entities. The complete absence of minimum requirements in the regulation leaves the AWA susceptible to the interpretation of individual regulated entities. At best, the regulation refers these entities to the direction of their attending veterinarians—who are not under the control of the agency. The regulation further makes reference to "committees" established by the AWA; however, as set forth above, those committees are established by the AWA only for research facilities, and not for dealers and exhibitors.

When an agency attempts to give meaning to a statute that is plain on its face, it must give effect to the intent of Congress. *Fertilizer Institute v. EPA,* 935 F.2d 1303, 1309 (D.C.Cir.1991). Congress has spoken clearly of the agency's duty, and the agency has failed to fulfill its duty. Accordingly, the Court shall set aside 9 C.F.R. § 3.81 as violative of the APA in that the regulation is contrary to law.

### B. The Court Shall Enter Judgment In Favor Of The Plaintiffs On Count II; The Agency's Failure To Promulgate Standards For A Physical Environment Adequate To Promote The Psychological Well–Being Of Primates Constitutes Agency Action Unlawfully Withheld And Unreasonably Delayed In Violation Of The APA.

The APA directs agencies to conclude matters presented to them in a reason-

able time and directs reviewing courts to compel agency action unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1). A court must review several factors in determining whether there has been unreasonable delay.

First, the court should ascertain the *length of time* that has elapsed since the agency came under a duty to act, and should evaluate any prospect of early completion.

Next, *[t]he reasonableness of the delay* must be judged in the context of the statute which authorizes the agency's action. This entails an examination of any legislative mandate in the statute and the degree of discretion given the agency by Congress. The Court must also estimate the extent to which delay may be undermining the statutory scheme, either by frustrating the statutory goal or by creating a situation in which the agency is losing its ability to effectively regulate at all.

Third, and perhaps most critically, the court must examine the *consequences of the agency's delay*. The deference traditionally accorded an agency to develop its own schedule is sharply reduced when injury likely will result from avoidable delay ... Lack of alternative means of eliminating or reducing the hazard necessarily adds to unreasonableness of a delay.

The agency must justify its delay to the court's satisfaction. If the court determined that the agency delays in *bad faith*, it should conclude that the delay is unreasonable.

*Cutler v. Hayes,* 818 F.2d 879, 897–98 (D.C.Cir.1987) (emphasis added) (citations, quotations, and footnotes omitted).

■ The 1985 Amendments to the AWA were enacted on December 23, 1985 and took effect one year after the date of enactment. Nearly 11 years later, the defendants have not yet issued standards to promote a physical environment adequate to promote the psychological well-being of primates pursuant to the AWA. This delay is unreasonable and unjustified. In fact, it is egregious. Moreover, without these standards, the psychological harm to primates that Congress intended to prevent likely is occurring. For these reasons, the agency's delay in issuing standards constitutes agency action unlawfully withheld and unreasonably delayed. The Court shall compel the agency to commence appropriate rulemaking procedures to comply with the directive of 7 U.S.C. § 2143(a)(2)(A).

**C. The Court Shall Enter Judgment In Favor Of The Plaintiffs On Count III; The Agency's Failure To Issue A Regulation Promoting The Social Grouping Of Nonhuman Primates Is Arbitrary, Capricious, And An Abuse Of Discretion In Violation Of The APA.**

■ The agency found that primates benefitted from social grouping and that social deprivation resulted in stereotypical behaviors. The agency stated:

In most cases, we expect group housing to be the most efficient and appropriate method of ensuring that the animals' social needs are met.... In general, *housing in groups promotes psychological well-being more assuredly than does individual housing. On the other hand, individual housing has been demonstrated to give rise to significantly more stereotypical behavior than does group housing.*

AR 1924–25; 55 Fed.Reg. 6472–73 (emphasis added). Yet, in the final regulation, the agency delineates only when social grouping might not be provided. As such, the regulation does not contain any minimum requirement on a point recognized by the agency itself as critical to the psychological well-being of primates.

The agency's proffered explanation notes that situations may arise where it is more harmful than helpful to house animals in groups, such as when animals are incompatible, aggressive, or have a disease. There is ample means to provide for such circumstances in the regulations. As the regulations are written, social grouping is left completely to the exhibitor's interpretation of "currently accepted professional standards" and the exhibitor *may* provide for exceptions in cases where social grouping is undesirable. No explanation is given as to why group housing is not required except in undesirable

circumstances. Accordingly, the regulations are arbitrary and capricious under the APA because they do not represent reasoned decisionmaking.

### D. The Court Shall Enter Judgment In Favor Of The Plaintiffs On Count IV; The Agency's Regulation Requiring "Plans" To Be Kept On–Site Violated The Notice And Comment Provisions Of The APA.

The APA provides that: "General notice of proposed rulemaking shall be published in the Federal Register ... [and] shall include ... either the terms or substance of the proposed rule or a description of the subjects and issues involved." 5 U.S.C. § 553(b)(3). The plaintiffs argue that notice was not adequately given during the rulemaking preceding of the agency's provision in its final rule that requires regulated entities to keep their "plans" on-site. Because notice was not given, the plaintiffs assert that the rule violates the notice and comment provisions of the APA.

■■■■ A final rule need not be identical to a proposed rule; however, "[w]here [a] change between [a] proposed and final rule is important, the question for the court is whether the final rule is a 'logical outgrowth' of the rulemaking proceeding. [I]f the final rule deviates too sharply from the proposal, affected parties will be deprived of notice and an opportunity to respond to the proposal." *American Fed'n of Labor & Cong. of Indus. Org. v. Donovan*, 757 F.2d 330, 338 (D.C.Cir. 1985) (citations omitted). A determination whether notice was adequate turns on an examination of the notice given and the rule finally adopted. *Id.* at 338–39. If there was inadequate notice of a regulation, the regulation is invalid on procedural grounds and the substantive validity of the change need not be examined. *Id.* at 338.

During its rulemaking proceedings, the provisions proposed by the agency stated: "*Dealers, exhibitors, and research facilities must develop, document, and follow a plan* for environmental enhancement adequate to promote the psychological well-being of nonhuman primates.... *This plan must be made available to APHIS,* and, in the case of research facilities, to officials of any pertinent funding agency." AR 1463; 55 Fed. Reg. 33525 (emphasis added). The provisions further stated that *records of exemptions from the plan* were to "*be maintained by the dealer, exhibitor, or research facility and [] made available to USDA officials of any pertinent funding Federal agency upon request.*" AR 1464; 55 Fed.Reg. at 33526. The final rule, however, provides that *both* the plan and any exemptions to the plan are to be made available *upon request* and, thus, are maintained by the exhibitors on-site. 9 C.F.R. § 3.81.

■■ The agency asserts that the final rule varies in no relevant respect from the proposed provisions, which, in the agency's view, gave reasonable notice that the plans and any exemptions would be kept on-site by the exhibitors. The Court does not agree. The proposed provisions provided that the plans would be *made available* to APHIS, whereas any exemptions to the plans were to be *made available upon request.* Based on the conspicuous omission of the phrase "upon request" with respect to availability of the plans in the proposed provisions, one would reasonably assume that the agency would not have to request the plans from exhibitors and, instead, that the plans would be sent by exhibitors to the agency for inspection.

■■ The defendants argue that because a number of comments interpreted the proposed provision in the manner asserted by the agency here, the Court should conclude that actual notice of the provision's meaning was given. This Circuit's Court of Appeals has held, however, that the agency "must itself provide notice of a regulatory proposal. Having failed to do so, *it cannot bootstrap notice from a comment.* The APA does not require comments to be entered on a public docket. Thus, notice necessarily must come—if at all—from the agency." *American Fed'n,* 757 F.2d at 340 (citing *Small Refiner Lead Phase–Down Task Force v. EPA,* 705 F.2d 506, 549 (D.C.Cir.1983) (emphasis in original)). The agency received 11,932 comments in response to the proposed provisions. AR 1878; 56 Fed.Reg. 6426. That a few comments addressed the physical

custody of the plans does not show that actual notice of the plan provision was given.

Neither the proposed provisions nor the information supplemental thereto states that the agency was planning to require regulated entities to keep the plans on-site. In accordance with *American Fed'n,* 757 F.2d at 339, the regulation at 9 C.F.R. § 3.81 must be set aside insofar as it adopted the plan provision in violation of the procedures mandated by the notice and comment provisions of the APA.[5]

## IV

## THE COURT SHALL GRANT THE DEFENDANTS' MOTION TO DISMISS WITH RESPECT TO COUNT V BECAUSE IT IS A NON–JUSTICIABLE CLAIM.

The plaintiffs seek judicial review of the defendant's alleged failure to enforce the AWA. They claim that the defendants' practice of instructing inspectors not to document violations of the AWA and its failure to inspect facilities constitutes an "abdication of its enforcement responsibilities." First Am. Compl. ¶ 122–23. The defendants argue that the Secretary's enforcement of the Act is committed to agency discretion by law, and hence is not subject to judicial review. Unfortunately, because of the language of the AWA, the defendants have managed to evade judicial review.

The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. In general, agency action is presumptively reviewable. *Lincoln v. Vigil,* 508 U.S. 182, 190, 113 S.Ct. 2024, 2030, 124 L.Ed.2d 101 (1993).

Under the APA, however, agency action is not subject to judicial review "to the extent that" such action is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2).

Thus, review is not available in those "rare circumstances where the relevant statute 'is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Lincoln,* 508 U.S. at 191, 113 S.Ct. at 2031 (quoting *Heckler v. Chaney,* 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985)). "In such a case, the statute ('law') can be taken to have 'committed' the decisionmaking to the agency's judgment absolutely." *Id.; see also, Webster v. Doe,* 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988); *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *Chiles v. United States,* 69 F.3d 1094 (11th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1674, 134 L.Ed.2d 777 (1996).

An agency's decision not to institute enforcement proceedings has been considered presumptively unreviewable. *Lincoln,* 508 U.S. at 191, 113 S.Ct. at 2030–31; *Chaney,* 470 U.S. at 831, 105 S.Ct. at 1655–56; *Safe Energy Coalition of Michigan v. United States Nuclear Regulatory Comm'n,* 866 F.2d 1473, 1476 (D.C.Cir.1989). This is because an agency's decision not to institute enforcement proceedings often involves "complicated balancing of a number of factors which are peculiarly within its expertise." *Chaney,* 470 U.S. at 831, 105 S.Ct. at 1655. The agency "must not only assess whether a violation has occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all." *Id.*

The agency action here falls within the *Chaney* exception to judicial review. The language of the AWA delegates discretion to the Secretary to "make such investigations or inspections as he deems necessary...." 7 U.S.C. § 2146(a). It does not provide any

---

5. The agency explained that it was shielding the plans from the public in order to keep the plans from terrorists. In this regard, the plaintiffs suggest that a less restrictive measure could have been adopted. While the Court expresses no opinion regarding the effectiveness of such an alternative, the Court reminds the agency of its "duty to consider responsible alternatives to its chosen policy and to give a reasoned explanation for its rejection of such alternatives." *City of Brookings Mun. Telephone Co. v. FCC,* 822 F.2d 1153, 1169 (D.C.Cir.1987) (citation omitted).

indication that Congress sought to curb this discretion. It does not impose a duty to make a finding of a violation or to initiate enforcement activities. The statute does not even mandate that the agency penalize a regulated entity found to be in violation. *See* 7 U.S.C. § 2149(c) (penalty "may" be assessed). The language in the AWA provides "no meaningful standard against which to judge the agency's exercise of discretion," and thus, the Secretary's decision whether to take enforcement action is unsuitable for judicial review. *See Chaney*, 470 U.S. at 830, 834–35, 105 S.Ct. at 1655, 1657–58.

The plaintiffs argue that, in accordance with this Circuit's decision in *Adams v. Richardson*, 480 F.2d 1159 (D.C.Cir.1973) (en banc), judicial review may be had. In *Adams*, an action was brought for declaratory and injunctive relief with respect to the enforcement by the Department of Health, Education and Welfare of the Civil Rights Act. The agency argued that the enforcement of the Act was committed to agency discretion that, therefore, that judicial review was precluded. This Circuit rejected the agency's argument in that case.

The Supreme Court specifically noted the *Adams* decision in *Chaney*. The Court stated that the presumption against reviewability may be rebutted when the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers. *Chaney*, 470 U.S. at 832–33, 105 S.Ct. at 1656–57.[6] The Court then cited *Adams* and, although the Court disclaimed any position regarding *Adams'* continued validity, it noted that the *Adams* case involved a "situation where ... the agency has 'consciously and expressly adopted a general policy' [of non enforcement] that is so extreme as to amount to an abdication of its statutory responsibilities." *Chaney*, 470 U.S. at 832 n. 4, 105 S.Ct. at 1656 n. 4. Subsequently, this Circuit noted that the statute involved in *Adams*, Title VI of the Civil Rights Act of 1964, contained a "clear and direct statutory mandate." *Cut-*

*ler v. Hayes*, 818 F.2d 879, 893 (D.C.Cir. 1987). It expressly required all federal agencies dispensing federal funds to enforce the provisions of Title VI that prohibit racial discrimination in programs accepting such funds. *Id.* In *Adams*, the agency consciously was supplying segregated institutions with federal funds. *Adams*, 480 F.2d at 1163.

The plaintiffs' allegations here do not satisfy the *Chaney/Adams* standard. The plaintiffs allege in Count V that the agency has engaged in a "practice of instructing its inspectors not to document violations of the AWA." First Am.Compl. ¶ 122. However, the plaintiffs complaint demonstrates that the agency does engage in some enforcement actions including investigating and inspecting regulated facilities, documenting violations, citing regulated entities for violations, and instructing the entities regarding actions necessary for compliance. *Id.* ¶¶ 25, 35, 37, 50, 59, 66–68, 70. Furthermore, as noted above, the AWA does not provide the clear statutory mandate involved in the *Adams* case.

Count V of the plaintiffs' Complaint reflects their belief, and the Court's, that the agency should undertake to live up to its obligations to achieve the extremely important goal underlying the AWA—to ensure the humane treatment of animals. Regrettably, the Court is powerless under these circumstances to ensure that the agency will do so. *See Chaney*, 470 U.S. at 839, 105 S.Ct. at 1659–60 (Brennan, J., concurring) ("Individual, isolated nonenforcement decisions ... must be made by hundreds of agencies each day. It is entirely permissible to presume that Congress has not intended courts to review such ... matters absent Congressional intent to the contrary...."). In this case, Congress enacted language imposing a discretionary duty on the agency to enforce the statute. This is an obvious and deliberate effort not only to hide but to avoid redressability. Any observer of the legislative and administrative process knows that when this

---

6. *See also Chaney*, 470 U.S. at 839, 105 S.Ct. at 1659–60 (Brennan, J., concurring) (nonenforcement decisions are reviewable where (1) an agency flatly claims that it has no statutory jurisdiction to reach certain conduct; (2) an agency engages in a pattern of non-enforcement of clear statutory language (*Adams*); (3) an agency has refused to enforce a regulation; (4) a nonenforcement decision violates constitutional rights; or (5) possibly when the decision is made for illegitimate reasons (i.e., bribery)).

kind of language is used, the agency is given a free hand and a shield.

The public can take solace that there is at least some government accountability under the APA and in accordance with the principles of *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803), as was seen with respect to Counts I–IV. With respect to Count V, however, because of its oath to uphold the law, this Court must, under *Chaney,* allow the agency to escape its wrath.

## CONCLUSION

For the reasons detailed above, the Court shall deny the defendants' Motion to Dismiss for lack of standing. The Court shall grant the defendants' Motion to Strike. The Court shall grant summary judgment in favor of the plaintiffs on Counts I–IV of the Complaint and shall grant the defendants' Motion to Dismiss Count V of the Complaint. The Court shall remand this case to the agency for rulemaking proceedings in accordance with the foregoing. Finally, the Court shall enter an Order of even date herewith, consistent with the foregoing Memorandum Opinion.

## ORDER

For the reasons set forth in the Court's Memorandum Opinion of even date herewith, it is, by the Court, this 29th day of October, 1996,

ORDERED that the defendants' Motion to Dismiss for lack of standing shall be, and hereby is, DENIED; and it is

FURTHER ORDERED that the defendants' Motion to Strike shall be, and hereby is, GRANTED; and it is

FURTHER ORDERED that final judgment shall be, and hereby is, entered for the plaintiffs on Counts I–IV of the Complaint; and it is

FURTHER ORDERED that the regulation at 9 C.F.R. § 3.81 shall be, and hereby is, set aside as invalid; and it is

FURTHER ORDERED that this matter shall be, and hereby is, remanded to the agency with respect to Count II with directions to promulgate new regulations that establish standards including minimum requirements for a physical environment adequate to promote the psychological well-being of primates, in accordance with the AWA and the APA, subject to notice and comment, without delay and in accordance with the Opinion of the Court on this date; and it is

FURTHER ORDERED that Count V of the Complaint shall be, and hereby is, DISMISSED; and it is

FURTHER ORDERED that any and all other extant motions shall be, and hereby are, declared MOOT; and it is

FURTHER ORDERED that the above-captioned case shall be, and hereby is, dismissed, without prejudice, from the dockets of this Court with the understanding that the plaintiffs may make oral application to the Deputy Clerk of the Court, Ms. Debra White, at (202) 273–0553, to re-open the same in the event that the defendants do not act with all deliberate speed in accordance with this Court's Order and Opinion of even date herewith.