**ANIMAL LEGAL DEFENSE FUND, INC., et al., Appellees,**

v.

**Mike ESPY, Secretary, United States Department of Agriculture, et al., Appellants.**

**Nos. 93–5127 and 93–5140.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 12, 1994.

Decided July 22, 1994.

Robert V. Zener, Atty., U.S. Dept. of Justice, Washington, DC, argued the cause for the appellants in No. 93–5127. On brief were Frank W. Hunger, Asst. Atty. Gen., U.S. Dept. of Justice, and Eric H. Holder, Jr., U.S. Atty., Washington, DC. Thomas W. Millet and Henry D. Gabriel, Attys., U.S. Dept. of Justice, Washington, DC, entered an appearance.

Harris Weinstein, Washington, DC, argued the cause for the appellants in No. 93–5140. On brief was Michael P. Socarras, Washington, DC.

Valerie J. Stanley, Rockville, MD, argued the cause for the appellees in Nos. 93–5127 and 93–5140.

On the brief were Robert H. Loeffler, Ellen E. Deason, Washington, DC, Stephen S. Dunham, Roxanne Jensen, Denver, CO, and Sheldon E. Steinbach, Washington, DC, for amici curiae urging the district court order should be vacated for lack of jurisdiction.

Before MIKVA, Chief Judge; WILLIAMS and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge KAREN LeCRAFT HENDERSON.

Concurring opinion filed by Chief Judge MIKVA.

KAREN LeCRAFT HENDERSON, Circuit Judge:

The appellants, various government agencies and officials sued below and intervenor National Association for Biomedical Research, seek reversal of a district court decision setting aside United States Department of Agriculture (USDA) regulations promulgated under the Federal Laboratory Animal Welfare Act, 7 U.S.C. §§ 2131 *et seq.*, (Act). 813 F.Supp. 882. Because we conclude the appellees lack standing to challenge the regulations, we vacate the judgment of the district court and remand with directions to dismiss the action.

The primary purpose of the Act is to ensure the humane care and treatment of various animals used in research or for exhibition or kept as pets. 7 U.S.C. § 2131. To this end, the Act requires, inter alia, that the Secretary of Agriculture "promulgate standards to govern the humane handling, care, treatment, and transportation of animals by dealers, research facilities, and exhibitors." *Id.* § 2143(a)(1). Those standards are to

include minimum requirements—

(A) for handling, housing, feeding, watering, sanitation, ventilation, shelter from extremes of weather and temperatures, adequate veterinary care, and separation by species where the Secretary finds necessary for humane handling, care, or treatment of animals; and

(B) for exercise of dogs, as determined by an attending veterinarian in accordance with general standards promulgated by the Secretary, and for a physical environment adequate to promote the psychological well-being of primates.

*Id.* § 2143(a)(2). To enforce the regulations the Act requires the chief executive officer of every "research facility" to appoint an oversight committee of at least three individuals who "possess sufficient ability to assess animal care, treatment, and practices in experimental research as determined by the needs of the research facility and shall represent society's concerns regarding the welfare of animal subjects used at such facility." *Id.* § 2143(b)(1). Each committee must include one doctor of veterinary medicine and one member unaffiliated with the facility who is "to provide representation for general community interests in the proper care and treatment of animals." *Id.* "[T]o ensure compliance with the provisions [of the Act] to minimize pain and distress to animals," each committee is required to inspect its facility semiannually, reviewing "practices involving pain to animals" and "the condition of animals." *Id.* § 2143(b)(3). After each inspection, the committee must file "an inspection certification report" which documents "reports of any violation of the standards promulgated, or assurances required, by the Secretary, including any deficient conditions of animal care or treatment, any deviations of research practices from originally approved proposals that adversely affect animal welfare, any notification to the facility regarding such conditions, and any corrections made thereafter." *Id.* § 2143(b)(4).

The appellees here challenged regulations promulgated under § 2143 which leave it to each individual research facility to (1) adopt "written standard procedures" specifying the "frequency, method, and duration" for exercising confined dogs, *see* 9 C.F.R. § 3.8, (2) develop its own plans for housing nonhuman primates, *see* 9 C.F.R. §§ 3.80, 3.81, and (3) determine whether dogs, cats and primates may be confined in "innovative" enclosures that do not squarely meet the regulations' required dimensions but provide "sufficient volume of space and the opportunity to express species-typical behavior," *see* 9 C.F.R. §§ 3.6(d), 3.80(c). In each case, the appellees objected on the ground that the regulations failed to include the statutorily mandated "minimum requirements" and instead impermissibly delegated promulgation of those standards to the individual research facilities. On cross-motions for summary judgment, the district court held that each of the challenged regulations was defective as alleged, issued a declaratory judgment to that effect and ordered a remand to the USDA for promulgation of new regulations in accordance with

the Administrative Procedure Act (APA).[1] Without reaching the merits of the appellees' challenges or the district court's resolution of them, we conclude the action should have been dismissed below for lack of standing. We reach this conclusion relying in large part on the court's recent opinion in *Animal Legal Defense Fund, Inc. v. Espy*, 23 F.3d 496, 498 (D.C.Cir.1994), (*ALDF*), in which some of the same parties challenged another USDA regulation promulgated under the Act.

■ As *ALDF* made clear, the standing inquiry entails two separate components, one constitutional, under article III of the United States Constitution, and one prudential, under the APA:

> To secure constitutional standing the plaintiffs must show injury in fact that is fairly traceable to the defendant's action and redressable by the relief requested. *See Allen v. Wright*, 468 U.S. 737 [104 S.Ct. 3315, 82 L.Ed.2d 556] (1984); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 474–75 [102 S.Ct. 752, 759–60, 70 L.Ed.2d 700] (1982). To secure judicial review under the APA, they must show that the injuries they assert fall within the "zone of interests" of the relevant statute. *See Clarke v. Securities Industry Ass'n*, 479 U.S. 388 [107 S.Ct. 750, 93 L.Ed.2d 757] (1987).

*Id.* at 498; *see also Hazardous Waste Treatment Council v. EPA*, 861 F.2d 277, 281–82 (D.C.Cir.1988), *cert. denied*, 490 U.S. 1106, 109 S.Ct. 3157, 104 L.Ed.2d 1020 (1989). The regulations here were challenged by six parties: (1) William Strauss, Esq., the "community interest" member of the oversight committee for the Health Science Center at Brooklyn; (2) Dr. Roger Fouts, Director of the Chimpanzee and Human Communication Institute at Central Washington University; (3) Primate Pole Housing, Inc. (PPH), a man-

ufacturer of "pole housing" systems for non-human primates; (4) Dr. Bernard Migler, the president of PPH; (5) the Animal Legal Defense Fund, Inc., a nonprofit organization devoted primarily "to protect[ing] animals through the enforcement of statutes, ordinances and regulations" and "to provid[ing] information to its members and other persons who wish to protect animals and enhance their welfare," Affidavit of Joyce Tischler at 1; and (6) the Society for Animal Protective Legislation, a nonprofit organization devoted to "obtain[ing] enactment of laws, *inter alia*, for the protection of animals used in laboratories," Affidavit of Christine Stevens at 1. For the following reasons we hold that none of these parties satisfies both the constitutional and prudential standing components.[2]

■ First, our decision in *ALDF* conclusively precludes standing for Strauss and the two non-profit organizations. Strauss claims standing here, as he did in *ALDF*, based on his status as an oversight committee member, asserting that the lack of "specific regulations that tell us how to improve conditions for primate psychological well-being and increase exercise for dogs" prevents him from influencing other committee members to improve conditions at the facility and generally fulfilling his role as the committee's community interest member. Affidavit of William S. Strauss. In *ALDF*, Strauss claimed standing on substantially the same ground, alleging that he was unable to carry out his statutory duties "without guidance in the form of specific, detailed regulations." 23 F.3d at 501. Noting that Strauss "simply maintains that the Secretary has impeded his attempts to enforce the provisions of the statute, in his role as representative of 'general community interests,'" the *ALDF* court concluded that Strauss's challenge "amount[ed] to nothing more than an at-

---

1. The appellees also successfully challenged the USDA's decision to delay full implementation of new cage requirements until February 1994, *see* 9 C.F.R. § 3.80, but that challenge is now moot as the final deadline has passed.

2. Although the appellants did not challenge below nor the district court rule on either aspect of the appellees' standing, we are nevertheless bound to conduct an independent inquiry on appeal. Standing, whether constitutional or prudential, is a jurisdictional issue which cannot be waived or conceded. *See ALDF*, at 498; *id.*, separate opinion 23 F.3d at 504 (Williams, J. concurring in part and dissenting in part); *Mallick v. International Bhd. of Elec. Workers*, 749 F.2d 771, 773 n. 1 (D.C.Cir.1984).

tempt to compel executive enforcement of the law, detached from any factual claim of injury" and therefore "has no place in the federal courts, for '[v]indicating the public interest (including the public interest in government observance of the Constitution and laws) is the function of Congress and the Chief Executive.'" 23 F.3d at 501 (quoting *Lujan v. Defenders of Wildlife,* —— U.S. ——, ——, 112 S.Ct. 2130, 2145, 119 L.Ed.2d 351 (1992)). The same reasoning applies here and we likewise conclude Strauss is without standing to challenge the USDA's regulations.

■ As for the two organizational appellees, their standing claims rest on their alleged inability, without sufficiently detailed regulations, to monitor compliance with the Act and to disseminate information about compliance to their members. The organizations' first claim is no more particularized or concrete than Strauss's and like his falls short of the article III injury threshold. Their claim of "informational" injury, on the other hand, satisfies the minimum standing requirements of article III but, like the similar claim urged by the organizations in *ALDF*,[3] "does not fall within the 'zone of interests' protected or regulated by the Animal Welfare Act." *ALDF,* at 501–02. The *ALDF* court explained that "to come within the zone of interests of the statute under which suit is brought, an organization must show more than a general corporate purpose to promote the interests to which the statute is addressed"; it must also "show a congressional intent to benefit the organization or some indication that the organization is 'a peculiarly suitable challenger of administrative neglect.'" *Id.* at 503 (quoting *Hazardous Waste Treatment Council v. EPA,* 861 F.2d 277, 283 (D.C.Cir.1988), *cert. denied,* 490 U.S. 1106, 109 S.Ct. 3157, 104 L.Ed.2d 1020 (1989)). The court then concluded that "[t]he Animal Welfare Act precludes any such showing" because "the general informa-

tional and educative interests in animal welfare upon which the organizations base their suit are, by the terms of the Act, the province of a different institution altogether," namely the oversight committees whose members "represent society's concerns regarding the welfare of animal subjects used at such facility," § 2143(b)(1), and that "[t]he evident congressional intent to entrust to the committees the functions of oversight and the dissemination of information precludes any inference that other private advocacy organizations are 'peculiarly suitable challenger[s] of administrative neglect.'" *Id.* (quoting *Hazardous Waste Treatment Council v. EPA,* 861 F.2d at 283). The *ALDF* court's conclusion compels us to hold that the organizations here are also outside the Act's zone of interests and therefore lack prudential standing to challenge the regulations at issue.[4]

■ Next, we conclude that appellees Migler and Primate Pole Housing, Inc. also fall outside the Act's zone of interests. Migler and PPH claim injury from their inability to sell their primate housing systems which, they contend, is the result of the regulations' failure to require, as it ought, that primates be housed in pairs or groups. This failure, they maintain, permits research facilities to continue using the same conventional cages they have in the past and provides no incentive to purchase PPH's innovative systems. Whether or not the regulations should require multiple housing of primates, Migler and PPH are not the proper parties to challenge the lack of such a mandate. The Act's purpose is to promote the humane treatment of animals, not the sale of any particular housing systems. 7 U.S.C. § 2131. Migler and PPH cannot "show either a congressional intent to protect or regulate the interest asserted, or some other indication that the litigant is a suitable party to pursue that interest in court." *ALDF,* at

---

3. Those were the Animal Legal Defense Fund and the Humane Society of the United States.

4. To the extent that the two organizations claim standing as representatives of members Fouts and Strauss, and others similarly situated, *see* Appellees' Brief at 42–43, their argument is foreclosed by our determinations that those individual members themselves lack standing. *See Warth*

*v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 2211–12, 45 L.Ed.2d 343 (1975) (stating that to claim representational standing, an organization "must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit.").

502 (citing *First Nat'l Bank & Trust Co. v. National Credit Union Admin.*, 988 F.2d 1272, 1275 (D.C.Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 288, 126 L.Ed.2d 238 (1993), *and Hazardous Waste Treatment Council v. Thomas*, 885 F.2d 918, 923–24 (D.C.Cir. 1989)). Thus, we hold that they too are without standing.[5]

█ Finally, we conclude that Dr. Fouts lacks standing because he has not alleged injury sufficient to satisfy article III requirements. The injury Fouts claims is that the regulations' "vagueness" prevents him from establishing a plan for his research institute, and in particular for a chimpanzee housing facility now under construction, that he can be certain will pass USDA muster. The harm alleged is insufficient for two reasons.

First, Fouts has not asserted a "distinct and palpable injury *to himself*," a standing prerequisite. *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206–07, 45 L.Ed.2d 343 (1975) (emphasis added). Under the Act, it is not individual researchers such as Fouts that are subject to regulation, *see* 7 U.S.C. § 2143(a)(1), or to civil penalties for noncompliance therewith but "research facilities," *see* 7 U.S.C. § 2149(b) (authorizing USDA to assess fines of up to $2,500 per day and to issue cease and desist orders against "[a]ny dealer, exhibitor, research facility, intermediate handler, carrier, or operator of an auction sale subject to section 2142 of this title, that violates any provision of this chapter, or any rule, regulation, or standard promulgated by the Secretary thereunder"). A research facility is defined in the Act as "any school (except an elementary or secondary school), institution, organization, or person that uses or intends to use live animals in research, tests, or experiments, and that (1) purchases or transports live animals in commerce, or (2) receives funds under a grant, award, loan, or contract from a department, agency, or instrumentality of the United States for the purpose of carrying out research, tests, or experiments." 7 U.S.C. § 2132. Fouts has not alleged, and there was no suggestion in

the record or at oral argument, that he personally, rather than his employing facility, satisfies either of the last two criteria, that is, that he either purchases or transports live animals or receives federal funds. Thus, Fouts does not appear to risk any direct personal injury in the event of noncompliance and he cannot claim standing based on any potential injury to his employer. *Cf. Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 543–45, 106 S.Ct. 1326, 1332–33, 89 L.Ed.2d 501 (1986) (individual school board member sued in official capacity "has no personal stake in outcome of the litigation" and cannot " 'step into the shoes of the Board' and invoke its right to appeal").

Second, even assuming Fouts faced some personal harm from possible noncompliance with the Act or regulations, such a prospect does not satisfy "the requirement that the plaintiff's injury be presently suffered or imminently threatened." *ALDF*, at 500. As the Supreme Court has observed, the concept of imminence "has been stretched beyond the breaking point when ... the plaintiff alleges only an injury at some indefinite future time, and the acts necessary to make the injury happen are at least partly within the plaintiff's own control." *Lujan*, —— U.S. at —— n. 2, 112 S.Ct. at 2138 n. 2. That is the case here. As alleged, Fouts's injury is remote and speculative, couched in language of uncertainty and futurity. He asserts, for example, that "because of the vagueness, even though our 'plan' may satisfy the present USDA inspector *there is no guarantee* it *will satisfy* another one" and that "[t]his *could potentially* lead to arbitrary decisions that *could* have a negative effect on the chimpanzees and research." Affidavit of Dr. Roger S. Fouts ¶ 5 (emphasis added). Regarding the chimpanzee housing facility now under construction, he complains "we are in the position of *not being sure* if we comply or *will comply in the future* with the stated regulations for great apes over 110 pounds." *Id.* ¶ 7 (emphasis added). Further, the al-

---

5. Because the regulations in no way impair the ability of Migler and PPH to deal freely with the covered laboratories, the two appellees cannot invoke the narrow vendor-vendee exception to the general rule that litigants may not assert standing based on the deprivation of a third party's rights. *See, e.g., National Cottonseed Prods. Ass'n v. Brock*, 825 F.2d 482, 488–92 (D.C.Cir.1987); *FAIC Secs., Inc. v. United States*, 768 F.2d 352, 356–61 (D.C.Cir.1985).

leged injury is in large part contingent on the conduct of Fouts and his employing facility—if they design an adequate "plan" that satisfies the USDA, no injury will ever come to pass. In short, the harm Fouts claims is simply not "'certainly impending'" as required to constitute an "injury in fact" that confers standing. *Whitmore v. Arkansas,* 495 U.S. 149, 158, 110 S.Ct. 1717, 1724, 109 L.Ed.2d 135 (1990) (citations omitted); *cf. ALDF,* at 500 (holding that former researcher who "merely states that at some undefined future time she 'will be required to engage in further research'" failed to show that injury alleged from having to observe animals' suffering during research was imminent).

For the preceding reasons we conclude the appellees all lack standing to challenge the USDA's regulations. Accordingly, the decision of the district court is vacated and the case remanded with directions to dismiss.

*So ordered.*

MIKVA, Chief Judge, concurring:

I concur in the majority's analysis. I write separately only to emphasize what appellees (plaintiffs below) did *not* allege as a basis for standing. Had the public interest organizations and individuals challenging the Secre-tary's regulations alleged an interest in protecting the well-being of specific laboratory animals (an interest predating this litigation), I think appellees would have had standing to challenge those regulations for providing insufficient protection to the animals. Such allegations would satisfy the requirements for constitutional standing, as enumerated in *Lujan v. Defenders of Wildlife,* —— U.S. ——, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). This claim would also place appellees within the "zone of interests" of the Animal Welfare Act: the Act, too, aspires to protect laboratory animals. *See Clarke v. Securities Industry Ass'n,* 479 U.S. 388, 394–403, 107 S.Ct. 750, 754–59, 93 L.Ed.2d 757 (1987). But appellees never made this claim, and they had the burden of demonstrating the specific basis of their standing. *Lujan,* —— U.S. at ——, 112 S.Ct. at 2136–37. I therefore concur in the dismissal of their suit.