### Michael IDROGO & Americans for Repatriation of Geronimo, Plaintiffs,

v.

### UNITED STATES ARMY & William Clinton, President of the United States of America, Defendants.

### No. Civ.A. 97–2430(CKK).

United States District Court, District of Columbia.

Aug. 6, 1998.

Michael Idrogo, San Antonio, TX, pro se.

Daria J. Zane, Assistant United States Attorney, Washington, DC, for Defendant.

## MEMORANDUM OPINION

KOLLAR–KOTELLY, District Judge.

Pro se Plaintiffs Michael Idrogo and the Americans for Repatriation of Geronimo bring suit to compel the United States Army and President William Jefferson Clinton to repatriate the human remains of Geronimo, to lift posthumously Geronimo's prisoner-of-war status, and to provide full military honors to Geronimo and celebrate his legacy with a parade through towns en route from Fort Sill, Oklahoma (where Geronimo's remains currently rest) to a point in Arizona or New Mexico. Pending before the Court are the Defendants' Motion To Dismiss or, in the Alternative, for Summary Judgment and the Plaintiffs' Opposition thereto. After liberally construing the Plaintiffs' Complaint and the materials that they appended to their opposition brief, the Court nonetheless concludes that the Plaintiffs lack standing to prosecute this action.

## I. BACKGROUND

Plaintiffs predicate their claims on the Native American Graves Protection and Repatriation Act ("NAGPRA"), Pub.L. No. 101–877, 104 Stat. 3048 (1990) (codified as amended at 25 U.S.C. §§ 3001–3013). Enacted "to protect Native American burial sites and the removal of human remains ... on Federal, Indian and Native Hawaiian lands," H.R.REP. 101–877, at 8 (1990), NAGPRA establishes a system for federal agencies and museums to inventory holdings of these remains and work with the appropriate tribes to repatriate such remains. *Id.* The Act mandates that a federal agency that possesses human remains of Native Americans expeditiously return those remains upon request from an Indian tribe. *See* 25 U.S.C. § 3005(a)(4).

Geronimo was a Chiricahua Apache who lived the last twenty-three years of his life as a prisoner of war under the custody of the United States Army. *See* Compl. ¶¶ 12, 14.

His remains are located at the Army's Fort Sill in Oklahoma. *See id.* ¶ 16. Plaintiff Michael Idrogo is a resident of Bexar County, Texas. *See id.* ¶ 3. In neither the Complaint nor the Plaintiffs' opposition, however, does Idrogo claim to be a member of any recognized (or unrecognized, for that matter) Native American tribe. Americans for Repatriation of Geronimo, of which Idrogo is a member, is "a group of concerned Americans who are eligible voters and residents of the various states of the United States." *Id.* ¶ 4.

## II. DISCUSSION

### A. *Plaintiffs lack standing to prosecute this action*

■ Parties that invoke federal jurisdiction bear the burden of establishing that there exists a justiciable case or controversy suitable for an Article III Court to resolve. *See FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). For this Court properly to exercise subject-matter jurisdiction, the Plaintiffs must satisfy the "irreducible constitutional minimum of standing." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). As this Circuit has framed it, "[t]o secure constitutional standing the plaintiffs must show injury in fact that is fairly traceable to the defendant's action and redressable by the relief requested." *Animal Legal Defense Fund, Inc. v. Espy,* 29 F.3d 720, 723 (D.C.Cir.1994) (internal quotations and citations omitted). The first variable in this calculus, "injury in fact," means that the Plaintiffs must have suffered the loss of a legally protected interest that is (1) concrete and particularized, *see Allen v. Wright,* 468 U.S. 737, 756, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984), and (2) "actual or imminent, not 'conjectural' or 'hypothetical,'" *Whitmore v. Arkansas,* 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). When challenging government action, the Supreme Court has

consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy.

*Lujan,* 504 U.S. at 573–74, 112 S.Ct. 2130.[1]

■ Plaintiffs cannot demonstrate that they have suffered an injury in fact that is concrete and particularized. *See Warth v. Seldin,* 422 U.S. 490, 508, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Under NAGPRA, where "the cultural affiliation of Native American human remains and associated funerary objects with a particular Indian tribe ... is established," a federal agency that possesses those remains shall expeditiously return them "upon the request of a known lineal descendant of the Native American or of the tribe or organization." 25 U.S.C. § 3005(a). As Congress has structured the repatriation provisions of NAGPRA, only direct descendants of Native American remains and affiliated tribal organizations stand to be injured by violations of the Act.

■ Neither Idrogo nor Americans for the Repatriation of Geronimo falls within this class. As to Idrogo, he never so much as claims to be a member of any Indian tribe. While he "believes" that Geronimo is an ancestor of his, Idrogo offers nothing that remotely substantiates this claim. Specifically he bases his claim to patrimonial ancestry on two similarities that he and Geronimo supposedly share: (1) that Geronimo, like Idrogo, could speak Spanish and (2) that both men are approximately the same height. *See* Pl.'s Reply ¶ 8. Americans for Repatriation of Geronimo fares no better. NAGPRA clearly defines "Indian tribe" to mean "any tribe, band, nation, or other organized group or community of Indians ... which is recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians." 25 U.S.C. § 3001(7). Americans for Repatriation of Geronimo is not an organization that

---

1. Because the Court finds that the Plaintiffs cannot demonstrate a concrete injury in fact, there is no need to explore academically the contours of causation and redressability.

falls within the ambit of NAGPRA's reach. Moreover, it is well settled that "[w]hether a group constitutes a 'tribe' is a matter that is ordinarily committed to the discretion of Congress and the Executive Branch, and courts will defer to their judgment." *Cherokee Nation of Okla. v. Babbitt*, 117 F.3d 1489, 1496 (D.C.Cir.1997) (citing *United States v. Holliday*, 70 U.S. (3 Wall.) 407, 419, 18 L.Ed. 182 (1865)).

Because NAGPRA does not vest any rights in Idrogo or Americans for Repatriation of Geronimo to repatriate or receive the human remains of Geronimo, they cannot claim any injury in fact even if it were proven that the United States Army somehow is violating NAGPRA by harboring Geronimo's remains at Fort Sill. In their opposition, the Plaintiffs make a series of cryptic and mostly incoherent arguments to establish standing. First, they write that "[t]he defendants violate 25 U.S.C. Chapter 32—Native American Graves Protection and Repatriation and constitutional limitations." Pl.'s Reply ¶ 10, at 4. At best, this grievance is nothing more than the same "generalized interest of all citizens" in seeing that the Army faithfully complies with the terms of NAGPRA. Such an interest is insufficient to confer standing on the Plaintiffs. *See Lujan*, 504 U.S. at 573–75, 112 S.Ct. 2130. Despite earnest effort to decipher the Plaintiffs' remaining arguments concerning standing, the Court simply cannot divine how the Plaintiffs attempt to satisfy the standing requirement. Reprinted in full, their arguments are: "Plaintiff has suffered, or will probably suffer, violation of his 'Last Will' as what fraud has been complained of in this case. Violation on the basis of race. Violation of the Equal Protection. 'Fenced out' on the basis of member of a 'minority group.' " Pl.'s Reply ¶ 10, at 4–5. Construed liberally, such incomprehensible statements cannot be fairly read to confer standing on the Plaintiffs.

Lastly, 25 U.S.C. § 3013 does not bestow standing on either of the Plaintiffs. Although they did not raise this argument in their opposition, the Court considers that it has a duty to explore all potential bases for these pro se litigants. Section 3013 provides:

"The United States district courts shall have jurisdiction over any action brought by any person alleging a violation of this chapter and shall have the authority to issue such orders as may be necessary to enforce the provisions of this chapter." 25 U.S.C. § 3013. At first glance, this provision, by purporting to grant district courts jurisdiction to hear "*any* action brought by *any* person alleging a violation of this chapter," seems to save the day for the Plaintiffs. The Supreme Court's decision in *Lujan*, however, underscores the error in this argument. In *Lujan*, the Court reviewed a "citizen-suit" provision of the Endangered Species Act, which provided, in pertinent part, that "any person may commence a civil suit on his own behalf (A) to enjoin any person, including the United States and any other governmental instrumentality or agency . . . who is alleged to be in violation of any provision of this chapter." *Lujan*, 504 U.S. at 571–72, 112 S.Ct. 2130 (quoting 16 U.S.C. § 1540(g)). The Supreme Court rejected the Eighth Circuit's view that Congress could confer upon all persons "an abstract, self-contained, noninstrumental 'right' to have the Executive observe the procedures required by law." *Id.* at 573, 112 S.Ct. 2130. The Court reaffirmed the principle that although Congress may expand substantive rights through statute, it is a "different matter from abandoning the requirement that the party seeking review must himself have suffered an injury." *Id.* at 578, 112 S.Ct. 2130 (quoting *Sierra Club v. Morton*, 405 U.S. 727, 738, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972)). Section 3013 of NAGPRA is the functional equivalent of the jurisdiction provision at issue in *Lujan*.[2] It attempts to confer standing on a class of individuals who need not demonstrate any injury in fact. Because the injury in fact requirement is constitutional, not simply prudential, *see Animal Legal Defense Fund*, 29 F.3d at 723, Congress may not augment the case-or-controversy requirement beyond what the Constitution permits.

### B. The claim in Plaintiffs' Amended Complaint must be dismissed

■ Plaintiffs moved to amend their Complaint on March 26, 1998. Under FED. R.CIV.P. 15(a), however, because the Defen-

---

**2.** Notably, Congress enacted NAGPRA two years before the Supreme Court decided *Lujan*.

**29**

dants have yet to serve a responsive pleading, Plaintiffs may amend their Complaint as a matter of right. Nonetheless, the one additional claim presented is patently frivolous. As this Circuit has held, "[c]omplaints may also be dismissed, *sua sponte* if need be, under Rule 12(b)(6) whenever 'the plaintiff cannot possibly win relief.'" *Best v. Kelly*, 39 F.3d 328, 331 (D.C.Cir.1994) (quoting *Baker v. Director, United States Parole Comm'n*, 916 F.2d 725, 726 (D.C.Cir.1990) (per curiam)).

■ The Amended Complaint alleges that the United States Army and President Clinton violated 42 U.S.C. § 1981.[3] With respect to the Army, the doctrine of sovereign immunity completely bars the Plaintiffs § 1981 action. By now it is beyond peradventure that "'[t]he United States, as sovereign, is immune from suit save as it consents to be sued.'" *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)). Moreover, courts within this Circuit have expressly recognized that the Army enjoys sovereign immunity as an instrumentality of the federal government. *See, e.g., Department of the Army v. Federal Labor Relations Auth.*, 56 F.3d 273, 275 (D.C.Cir.1995); *Dancy v. Department of the Army*, 897 F.Supp. 612, 614 (D.D.C.1995) ("Absent its express waiver, the Department of the Army possesses sovereign immunity from suit."). Accordingly, the Court dismisses the Plaintiffs' § 1981 claim against the Department of the Army based on principles of sovereign immunity.

■ Turning to their claim against President Clinton, the Court also dismisses the Amended Complaint's § 1981 count against the President under the well-recognized tenet of constitutional law that the Constitution affords absolute immunity to the President from civil damage actions challenging his official acts. *See Nixon v. Fitzgerald*, 457 U.S. 731, 749–56, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982). Accordingly, the Amended Complaint must be dismissed pursuant to FED. R.CIV.P. 12(b)(6) because "'the plaintiff[s]

cannot possibly win relief.'" *Best*, 39 F.3d at 331 (quoting *Baker*, 916 F.2d at 726).

### III. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiffs lack standing to prosecute their NAGPRA claims. Additionally, the Court, *sua sponte*, dismisses the Plaintiffs' § 1981 claim against the Department of the Army and President Clinton.

An Order accompanies this Memorandum Opinion.

### *ORDER*

For the reasons expressed in the accompanying Memorandum Opinion, it is, this 6 day of August 1998, hereby

**ORDERED** that Defendants' Motion To Dismiss or, in the Alternative, for Summary Judgment [# 7] shall be, and hereby is, **GRANTED;** and it is

**FURTHER ORDERED** that this case shall be, and hereby is, **DISMISSED WITH PREJUDICE** from the dockets of this Court.

**SO ORDERED.**

---

**3.** Section 1981(a) provides, in pertinent part:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
42 U.S.C. § 1981(a).