Michael R. STOWERS, Plaintiff,

v.

Patrick R. DONAHOE, Postmaster General of the United States, and National Association of Letter Carriers, AFL–CIO, and National Association of Letter Carriers AFL–CIO, Branch 352, Defendants.

No. 4:11–cv–112.

United States District Court,
S.D. Iowa,
Central Division.

Oct. 19, 2011.

Gary L. Hayward, United States Attorney, Mark T. Hedberg, Hedberg & Boulton PC, Des Moines, IA, for Defendants.

Michael R. Stowers, Waukee, IA, pro se.

## ORDER

ROBERT W. PRATT, Chief Judge.

Michael R. Stowers, ("Plaintiff"), appearing pro se, filed an Amended Complaint against Patrick R. Donahoe, Postmaster General of the United States ("Postal Service"), the National Association of Letter Carriers, AFL–CIO (the "Union"), and the National Association of Letter Carriers, AFL–CIO, Branch 352 ("Local 352")[1] (collectively referred to as "Defendants") on May 19, 2011. Clerk's No. 5.

Presently before the Court are two Motions to Dismiss—one filed by the Postal Service and the other filed jointly by the Union and Local 352. Clerk's Nos. 9, 12. Plaintiff filed a single resistance to both Motions to Dismiss. Clerk's No. 17. No replies were filed and the matters are, therefore, fully submitted.

## I. PLAINTIFF'S FACTUAL ALLEGATIONS

Plaintiff alleges that he is employed by the Postal Service as a city letter carrier at the University Place Station. Am. Compl. ¶ 3. Plaintiff is a member of Local 352, a branch of the Union. Id. ¶ 5. Pursuant to the terms of a collective bargaining agreement (the "CBA"), the Union is "the exclusive bargaining representative of all employees in the bargaining unit for which it has been recognized and certified at the national level—City Letter Carriers." Id. ¶¶ 6–7. Among other things, the CBA provides that letter carriers who want to work overtime can indicate that preference by signing a list at the beginning of each calendar quarter indicating that they: 1) desire overtime, but only to the extent it is on their own route; 2) desire overtime up to 10 hours in a given work day, either on their own route, on another route, or both; or 3) desire overtime up to 12 hours in a given work day, either on their own route, or on another route, or both. Id. ¶ 11. Letter carriers who indicate a preference for overtime are referred to as being on the "Overtime Desired List," or "ODL." Id. ¶ 12. Letter carriers who have not signed up for the ODL are referred to as being on the "Non–Overtime Desired List," or "non-ODL." Id. ¶ 13. According to the CBA, full time regular employees on the non-ODL list may be required to work overtime in the event the voluntary ODL does not provide sufficient qualified people, but "only if all available employees on the [ODL] have worked up to twelve (12) hours in a day or sixty (60) hours in a service week." Id. ¶¶ 16–17.

According to Plaintiff, the Postal Service management at the University Street Station "has a pattern and practice of requiring non-ODL carriers to work overtime prior to exhausting the ODL." Id. ¶ 19. In

---

**1.** The Court will refer to the Union and Local 352 collectively as the "Union Defendants."

particular, "the [Postal] Service has required non-ODL carriers to work overtime prior to exhaustion of the ODL in order to meet legitimate service goals." [2] *Id.* ¶ 24. Further, the Postal Service is alleged to have a "pattern and practice of requiring letter carriers, regardless of whether they are on the ODL for a given Zone, to perform mandatory overtime in another Zone, without regard to whether that particular Zone's ODL has been exhausted." *Id.* ¶ 26a.

As a result of these alleged violations of the CBA, Local 352 union stewards have filed grievances on "multiple occasions." *Id.* ¶ 25. Such grievances have "been repeatedly settled pursuant to the grievance procedure provisions of the CBA with inconsistent results." *Id.* ¶ 27. That is, sometimes the ODL carriers are compensated for up to twelve hours, regardless of the number of hours worked by non-ODL carriers, sometimes the ODL carriers are compensated solely for the number of hours worked by non-ODL carriers, sometimes the non-ODL carriers are compensated for being required to work the mandatory overtime; and "sometimes they are not." [3] *Id.* Despite these grievances, neither the Union nor Local 352 has ever, through the grievance process outlined in the CBA, obtained a binding adjudication or other decision of precedential value articulating: 1) whether the Postal Service may require non-ODL to work mandatory overtime prior to the exhaustion of the ODL based upon operational necessities; 2) whether the Postal Service can require a carrier from one zone to work mandatory overtime in another zone prior to the exhaustion of that zone's ODL; 3) whether ODL carriers are required to be compensated up to twelve hours when non-ODL carriers are required to work mandatory overtime prior to the exhaustion of the ODL regardless of the number of hours actually worked by non-ODL carriers; and 4) whether non-ODL carriers are entitled to compensatory or other damages for having been required to work mandatory overtime prior to exhaustion of the ODL. *Id.* ¶ 28.

According to Plaintiff, this "lack of finality regarding these issues has created a workplace atmosphere fraught with mutual labor-management hostility." *Id.* ¶ 29. That is, the Union and Local 352 claim that the Postal Service continuously engages in practices that violate the CBA, while the Postal Service claims that it is permitted to engage in such practices under the CBA, yet there has been no adjudication as to which side is correct. *Id.* ¶¶ 29–29a. Plaintiff further alleges that the CBA contemplates the prompt resolution of grievances, but that the CBA has been "subverted and rendered ineffective and futile" by the Union and Local 352. *Id.* ¶¶ 30–31. Specifically, Plaintiff claims that certain ODL grievances involving a "block" of ODL violations from the last quarter of 2008 into 2009 (the "2008–09 Grievances") "remain pending or are being handled by University Station's union steward Amber Johnston from the last quarter of 2008, nearly two and one-half years after the incidents occurred which gave rise to those grievances." *Id.* ¶¶ 32–33.

**2.** Plaintiff contends that in the 90 days immediately preceding the filing of the present action, the "[Postal] Service has required non-ODL carriers to work mandatory overtime prior to the exhaustion of the ODL on a virtually daily basis with the ODL only being exhausted on fewer that five (5) occasions." Am. Compl. ¶ 26.

**3.** It is unclear from the Amended Complaint whether Plaintiff is asserting only that non-ODL carriers are sometimes not compensated at all or whether he is asserting that both ODL and non-ODL carriers are sometimes not compensated at all.

Though Plaintiff claims that he is a "member of the class," *id.* ¶ 34, involved in the 2008–09 Grievances, the status of these grievances is not entirely clear. It appears from Plaintiff's allegations that the 2008–09 Grievances may have been submitted and decided by the "Step B Dispute Resolution Team" at some point in time. *See id.* ¶¶ 37c, 37i. According to Postal Service management personnel, the Dispute Resolution Team determined that the "grievances were inadequately documented," but had been "remanded for expansion of the factual record, if any, with the [Postal] Service remaining free to claim that, upon any resubmittal the grievances were untimely."[4] *Id.* ¶¶ 37d–37e. When Plaintiff inquired as to why he had never been told that a decision had issued on the 2008–09 Grievances, Steward Johnston allegedly told him that the grievances were not Plaintiff's concern because Plaintiff never provided written statements and "an aggrieved letter carrier who had not provided her with a written statement was not entitled to relief." *Id.* ¶ 37j. Thus, Plaintiff claims that "his entitlement to compensatory damages pursuant to the grievance procedure has been prejudiced by [Local 352] and its steward, by the [Postal] Service, or both" or, alternatively, that "the inordinate amount of time being taken to resolve these grievances has impaired and continues to impair [Plaintiff] being made whole pursuant to the contractual grievance process." *Id.* ¶¶ 38–39.

Plaintiff claims that, with respect to grievances post-dating the 2008–09 Grievances, Steward Johnston "has successfully argued that she has been provided insufficient union time and/or relevant documentation required to prepare these grievances for review, with the [Postal] Service being required to provide her with set

blocks of union time in order to address the backlog of these grievances." *Id.* ¶ 40. Despite the apparent ongoing process regarding grievances post-dating the 2008–09 Grievances, Plaintiff maintains that the Postal Service blames the Union and Local 352 for problems with the grievance process, while the Union and Local 352 blame the Postal Service, such that "individual grievants such as the plaintiff who are not at fault for any breakdown in the grievance process are being prevented from being made whole" by the Defendants' conduct. *Id.* ¶¶ 41–42. Thus, Plaintiff claims that the Union and Local 352 have breached their duty of full and fair representation; that the Postal Service has repudiated the ODL provisions of the CBA; and that the Defendants have "rendered the contractual grievance process an exercise in futility" since they have "thwarted the plaintiff's being made whole by unreasonably delaying the adjudication of ODL grievances and failing to obtain meaningful injunctive relief to prevent the [Postal] Service from violating the ODL provisions of the CBA on a virtually daily basis." *Id.* ¶ 43.

Plaintiff's Amended Complaint asserts the following claims: 1) one count seeking declaratory judgment "as to whether and under what circumstances the [Postal] Service may (a) require non-ODL carriers to work mandatory overtime prior to the exhaustion of the ODL; [and] (b) require the plaintiff to work mandatory overtime in excess of ten (10) hours prior to the exhaustion of the twelve (12)-hour ODL"; 2) one count of "breach/repudiation of contract against [the Postal Service] and breach of duty of full and fair representation against [the Union] and [Local 352] as to the pattern and practice of reacquiring

---

4. Upon Plaintiff's inquiry, however, Steward Johnston allegedly told Plaintiff that she had received an extension that would permit the

2008–09 Grievances to be timely refiled. Am. Compl. ¶ 37i.

the non-ODL to engage in mandatory overtime prior to the exhaustion of the ODL"; and 3) one count of "breach/repudiation of contract against [Postal Service] and breach of full and fair representation against [Local 352] as to 2008–09 ODL grievances." *See* Am. Compl. ¶¶ 44–51 (capitalization modified from original).

## II. STANDARDS OF REVIEW

Both Motions to Dismiss assert that Plaintiff has failed to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). The Postal Service further argues that Plaintiff's claims must be dismissed for want of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), because the Plaintiff lacks standing to bring the present claims.

### A. *Federal Rule of Civil Procedure 12(b)(6)*

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). In reviewing a complaint, a court must "accept as true all of the factual allegations contained in the complaint," and must draw "all reasonable inferences ... in favor of the plaintiff." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir.2008) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

*Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. "The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.' It is not, however, a 'probability requirement.'" *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Iqbal*, 129 S.Ct. at 1949).

### B. *Federal Rule of Civil Procedure 12(b)(1)*

A motion to dismiss under Rule 12(b)(1) may challenge either the facial sufficiency or the factual truthfulness of a plaintiff's jurisdictional allegations. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir.1993). Regardless, jurisdictional issues are for the Court to determine. *See Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.1981). When considering a facial challenge to jurisdiction, a court must presume that all of the facts alleged by the plaintiff in support of jurisdiction are true. *See Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990) ("In the first instance, the court restricts itself to the face of the pleadings, and the non-moving party receive[s] the same protections as it would defending against a motion brought under Rule 12(b)(6). The general rule is that a complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" (citations omitted)). A court confronted with a factual challenge must weigh the conflicting evidence concerning jurisdiction, without presuming the truthfulness of the plaintiff's allegations. *Land v. Dollar*, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Osborn*, 918 F.2d at 730.

## III. LAW AND ANALYSIS

### A. *Rule 12(b)(6)*

Plaintiff brings his action "pursuant to 29 U.S.C. § 185 or, in the alternative, 39 U.S.C. § 1208." Am. Compl. ¶ 1. The two code provisions are "essentially identical," with 29 U.S.C. § 185 (hereinafter referred to as § 301 of the Labor–Management Relations Act of 1947 ("LMRA")) being the "private sector counterpart" of 39 U.S.C. § 1208, a provision of the Postal Reorganization Act of 1970. *Abernathy v. U.S. Postal Serv.,* 740 F.2d 612, 614 (8th Cir. 1984); *compare* 39 U.S.C. § 1208(b) ("Suits for violation of contracts between the Postal Service and a labor organization representing Postal Service employees, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy."), *with* 29 U.S.C. § 185(a) ("Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."). Thus, case law applicable to § 1208 is generally considered apposite to issues decided under § 301 and vice-versa. *See Bowen v. U.S. Postal Serv.,* 459 U.S. 212, 232 n. 2, 103 S.Ct. 588, 74 L.Ed.2d 402 (1983) (noting that the two provisions are "identical . . . in all relevant respects"); *Abernathy,* 740 F.2d at 614. The Court will, therefore, refer to the provisions interchangeably throughout this Order.

 In a case such as this one, where the Plaintiff concedes that the CBA between the Union and the Postal Service contains an arbitration provision, it is generally required "that contractual grievance and arbitration procedures must be exhausted before an employee files a § 301 suit." *Bowen,* 459 U.S. at 232, 103 S.Ct. 588. An employee may, however, bring what is known as a "hybrid" action under § 301(a) without satisfying the exhaustion requirements if the employee can show that the "employer breached the terms of a CBA *and* that the union breached its duty of fair representation under that CBA." *Miner v. Local 373,* 513 F.3d 854, 860 (8th Cir.2008) (emphasis added); *Scott v. United Auto.,* 242 F.3d 837, 838 (8th Cir.2001) ("In order to prevail against either the employer or union, the employee must prove both that the union breached its duty of fair representation and that the employer breached the collective bargaining agreement." (citing *Vaca v. Sipes,* 386 U.S. 171, 185, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967))); *see also DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 164–65, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (discussing how the two claims in a hybrid action are "inextricably interdependent. To prevail against either the company or the Union, . . . [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union. The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both. The suit is thus not a straightforward breach of contract suit under § 301 . . . but a hybrid § 301/fair representation claim, amounting to a direct challenge to the private settlement of disputes under the [CBA]." (internal citations and quotations omitted)). Alternatively, the exhaustion requirement may be excused where a plaintiff demonstrates that the employer has repudiated the grievance procedure,[5]

---

**5.** Although Plaintiff asserts in his Amended Complaint that the Postal Service has "repudiated the ODL provisions of the CBA," Am. Compl. ¶ 43, none of the parties discuss "re-

*see Vaca,* 386 U.S. at 185, 87 S.Ct. 903 ("An obvious situation in which the employee should not be limited to the exclusive remedial procedures established by the contract occurs when the conduct of the employer amounts to a repudiation of those contractual procedures"), or where resort to the grievance procedure can be shown to be futile.[6] *See Glover v. St. Louis–San Francisco Ry. Co.,* 393 U.S. 324, 329–31, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969) (discussing "another of the most obvious exceptions to the exhaustion requirement—the situation where the effort to proceed formally with contractual or administrative remedies would be wholly futile").

■ Both the Postal Service and the Union Defendants contend that the allegations of Plaintiff's Amended Complaint fail, as a matter of law, to state a claim for breach of the duty of fair representation by the Union Defendants. Section 9(a) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 159(a), grants labor unions exclusive status as the bargaining representative for its members. *See* 29 U.S.C. § 159(a). Along with this exclusive status comes the judicially created "duty of fair representation" ("DFR"). *See NLRB v. Allis–Chalmers Mfg. Co.,* 388 U.S. 175, 181, 87 S.Ct. 2001, 18 L.Ed.2d 1123 (1967) ("It was because the national labor policy vested unions with power to order the relations of employees with their employer that this Court found it neces-

sary to fashion the duty of fair representation."); *Vaca,* 386 U.S. at 177, 87 S.Ct. 903 ("[T]he duty of fair representation has stood as a bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law."). The DFR means that a union, amongst other things, owes a duty "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca,* 386 U.S. at 177, 87 S.Ct. 903.

■ To set forth a sufficient claim for breach of the DFR, Plaintiff must allege facts which support a plausible conclusion that the "the Union's conduct toward him was 'arbitrary, discriminatory, or in bad faith.'" *Hansen v. Qwest Commc'ns,* 564 F.3d 919, 923 (8th Cir.2009) (quoting *Vaca,* 386 U.S. at 190, 87 S.Ct. 903); *see also Cross v. United Auto Workers, Local 1762,* 450 F.3d 844, 847 (8th Cir.2006). Plaintiff concedes that neither of the Union Defendants acted in a discriminatory fashion toward him, but maintains that he has alleged sufficient facts to support a claim that the Union Defendants acted either arbitrarily or in bad faith. *See* Pl.'s Resistance Br. at 24 ("[T]he plaintiff is in agreement ... that the Complaint does not support a claim that the union breached its duty on the basis of any discriminatory animus against the plaintiff.").

pudiation" as a basis to excuse exhaustion. The Court notes, however, that repudiation only serves to excuse the typical exhaustion requirements when the matter repudiated is the "contractual grievance process" itself. *See Carpenters Fringe Benefit Funds of Ill. v. McKenzie Eng'g,* 217 F.3d 578, 586 (8th Cir. 2000) ("'Arbitration provisions, which themselves have not been repudiated, are meant to survive breaches of contract, in many contexts, even total breach.'" (quoting *Drake Bakeries, Inc. v. Local 50, Am. Bakery & Con-*

*fectionery Workers Int'l,* 370 U.S. 254, 262 & n. 9, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962))).

**6.** Plaintiff alleges that the grievance process has been rendered futile by the Defendants. *See* Am. Compl. ¶ 30. Though it appears unlikely that Plaintiff has alleged sufficient facts to excuse exhaustion on the basis of futility, the Court need not reach this question in light of its conclusion, *infra,* that Plaintiff has stated a plausible claim that the Union breached the duty of fair representation.

The Union Defendants counter Plaintiff's claim by arguing:

> Here, plaintiff's entire DFR claim consists of allegations that, despite the union's having grieved alleged Postal Service breaches of the CBA's overtime provisions on "multiple occasions," Amended Complaint, ¶ 42, the resolutions of these grievances have been "unreasonably delayed" and/or "failed to obtain meaningful injunctive relief" which has rendered the grievance process "an exercise in futility." *Id.*, ¶ 43. At most, he alleges that multiple overtime grievances have proceeded more slowly than he desires and that certain grievance settlements have provided less relief that he would prefer.

Union Defs.' Br. at 5. Similarly, the Postal Service asserts that Plaintiff's claims of "unreasonabl[e]e delay" and "fail[ure] to obtain meaningful injunctive relief" are not actionable: 1) because a union does not breach the DFR by settling grievances short of arbitration; and 2) because Plaintiff's allegations amount, at most to negligence, which is insufficient to state a federal claim for breach of the DFR. Postal Serv. Br. at 8. As to why the Plaintiff's allegations amount only to mere negligence, the Postal Service more specifically argues that "Plaintiff is not contending that the union is refusing to process his grievance, as required by *Cross*, [450 F.3d at 844], or that it has conducted the pending grievances in an irrational manner. Rather, he is contending that the union has not handled the grievances with the skill and dispatch he believes warranted in the circumstances." *Id.*

■ "'A union's actions are arbitrary only if, in the light of the factual and legal landscape at the time of the union's action, the union's behavior is so far outside a wide range of reasonableness as to be irrational.'"[7] *Hansen*, 564 F.3d at 923–24 (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991)). "'Mere negligence, poor judgment, or ineptitude by a union is insufficient to establish a breach of the duty of fair representation.'" *Id.* at 924 (quoting *Buford v. Runyon*, 160 F.3d 1199, 1202 (8th Cir.1998)). Moreover, [a] union ... does not act arbitrarily simply because it does not pursue a grievance that it has decided lacks merit." *Cross*, 450 F.3d at 847 (quoting *Sanders v. Youthcraft Coats & Suits, Inc.*, 700 F.2d 1226, 1229 (8th Cir.1983)). Similarly, a claim for bad faith must be supported by evidence of "the existence of fraud, deceitful action, or dishonest conduct" by the Union. *Baxter v. United Paperworkers, Int'l Union, Local 7370*, 140 F.3d 745, 747 (8th Cir.1998).

■ At this stage of the proceedings, where Plaintiff is entitled to all reasonable inferences from the facts alleged in the Amended Complaint, the Court must disagree with the Defendants' characterization of Plaintiff's factual allegations and find that Plaintiff has provided enough facts in his Amended Complaint to state a claim to relief that is plausible on its face. Regarding the 2008–09 Grievances, Plain-

---

**7.** In *United Steelworkers of America v. Rawson,* the United States Supreme Court recognized that the "doctrine of fair representation is an important check on the arbitrary exercise of union power," but noted that it is "a purposefully limited check" because "'a wide rage of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents.'" 495 U.S. 362, 374, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990) (quoting *Ford Motor Co. v. Huffman,* 345 U.S. 330, 338, 73 S.Ct. 681, 97 L.Ed. 1048 (1953)). Accordingly, "[a]ny substantive examination of a union's performance ... must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities." *Air Line Pilots Ass'n, Int'l v. O'Neill,* 499 U.S. 65, 78, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991).

tiff has alleged both that the CBA provides mechanisms for "adjudicat[ing] grievances with promptness," Am. Compl. ¶ 31, and that the 2008–09 Grievances "remain pending ... nearly two and one-half years after the incidents occurred which gave rise to those grievances." *Id.* ¶ 33. This extensive and unexplained delay in handling and resolving the 2008–09 Grievances certainly could be considered so outside the range of reasonableness as to be deemed "arbitrary." *See, e.g., Ruzicka v. Gen. Motors Corp.,* 523 F.2d 306, 312 (6th Cir.1975) (finding inexplicable delay in pursuing grievances to be a breach of the DFR and stating, "The requirement of exhaustion of intra-Union remedies is bottomed on the hope that such procedures will quickly resolve disputes without the delay inherent in the judicial process and with the aid of persons experienced at resolving member-union conflicts short of a full-blown judicial proceeding. When that hope has failed, however, the member is not barred from proceeding to federal court with a claim of unfair representation."). Moreover, Plaintiff has also alleged that Steward Johnston has been dishonest about the status of the 2008–09 Grievances. *See* Am. Compl. ¶¶ 37a-l (alleging that Steward Johnston has provided "various responses" about the status of grievances, including that they were being impeded by either the Union or the Postal Service, or that extensions of time had been granted to pursue the grievances when extensions had not actually been granted). These allegations of dishonest or deceitful conduct state at least a plausible claim that the Union acted with bad faith in handling the grievances.[8]

The Court does not dispute that, ultimately, the Union's conduct in handling the grievances may be deemed to be merely negligent and, thus, not actionable. A determination of whether the Union's conduct is merely negligent or whether it is arbitrary or in bad faith, however, is heavily dependent on the specific facts of the case and, accordingly, is more properly resolved at the summary judgment stage of the proceedings. Indeed, at this pre-discovery stage of the litigation, Plaintiff would be hard-pressed to present solid and irrefutable evidence of arbitrariness or bad faith, as he is limited to making allegations supporting a plausible entitlement to relief by the small quantify of information known to him. Accordingly, Defendants' Motions to Dismiss Plaintiff's Amended Complaint for failure to state a claim are denied.

### B. *Rule 12(b)(1)*

(1) an "injury in fact" that is both (a) concrete and particularized, and (b) actual or imminent, rather than conjectural or hypothetical; (2) a causal connection between the alleged injury and the defendant's conduct; that is, that the injury is "fairly traceable" to the challenged action; and (3) that it is likely that a favorable decision will redress the injury.

---

8. The Court also declines to dismiss Plaintiff's claims to the extent they assert that the Union has failed to obtain meaningful injunctive relief. The way the Court reads this claim, it is inextricably intertwined with Plaintiff's assertion that the Union's failure to timely pursue the 2008–09 Grievances has worked an ongoing harm because the Postal Service continues to engage in a pattern and practice violating the ODL provisions of the CBA. That is, the ongoing breach of the CBA by the Union would not be occurring were it not for the Union's breach of DFR via its failure to pursue ODL related grievances. To the extent that Plaintiff's asserted "claims" are not intertwined, the Court is confident that the parties will more fully elucidate the issues at the summary judgment stage of the proceedings.

*Ben Oehrleins & Sons & Daughter, Inc. v. Hennepin Cnty.*, 115 F.3d 1372, 1378 (1997) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). In addition to these Article III requirements, the Court is also bound by prudential limitations on its exercise of jurisdiction. *Id.* These prudential limitations require that a party assert its own legal interests, rather than those of a third party; that a party not assert a "generalized grievance"; and that the party's interests are within the "zone of interests" intended to be protected by the statute, rule or constitutional provision upon which the claim is based. *Id.* at 1378–79 (quotations and citations omitted). "Standing, whether constitutional or prudential, is a jurisdictional issue which cannot be waived or conceded." *See Animal Legal Def. Fund, Inc. v. Espy*, 29 F.3d 720, 723 n. 2 (D.C.Cir.1994); *see also Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (stating that the question of standing "involves both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise"). Indeed, both constitutional and prudential standing must be present, as both are necessary prerequisites to the exercise of jurisdiction. *See Starr v. Mandanici*, 152 F.3d 741, 750 (8th Cir.1998) (stating that the court "lacks jurisdiction" if judicially imposed prudential standing limitations are not satisfied).

■ In its Motion to Dismiss, the Postal Service challenges Plaintiff's prudential standing. More specifically, the Postal Service claims that Plaintiff lacks "standing to bring suit to challenge the union's handling of someone else's grievance." Postal Serv. Br. at 10–11 ("Because Plaintiff is asking the Court to determine whether the union has provided fair representation to third party grievants, he has not presented a case or controversy adjudicable in an Article III court.").

While the Court does not dispute the proposition that Plaintiff is entitled to pursue only his own legal interests, the allegations of the Amended Complaint generally support a conclusion that Plaintiff is, if not a direct grievant, at least a third-party beneficiary of the grievance process or a member of a class of grievants intended to be benefitted by the grievance process. *See, e.g.,* Am. Compl. ¶ 34 (alleging that Plaintiff is a "member of the class involved in these grievances"). Given that the Court has not been provided a copy of the CBA itself, or any documentation demonstrating the scope of the grievances at issue in this case or the class of persons to which relief from the grievances would extend, it would be premature to conclude as a matter of law that Plaintiff lacks standing when the allegations of his Amended Complaint plausibly support his entitlement to bring the present action. Accordingly, the Motion to Dismiss is denied without prejudice to the Postal Service reasserting the claim in the context of a properly supported Motion for Summary Judgment.

## IV. CONCLUSION

For the reasons stated herein, Defendants' pending Motions to Dismiss (Clerk's Nos. 9, 12) are DENIED.

IT IS SO ORDERED.